Steven J. HARRIS, Plaintiff–Appellant,

v.

COUNTY OF RIVERSIDE,
Defendant–Appellee.

No. 88–6498.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 1, 1989.

Decided May 30, 1990.

John B. Murdock, Santa Monica, Cal., for plaintiff-appellant.

Timothy T. Coates, Greines, Martin, Stein & Richland, Beverly Hills, Cal., for defendant-appellee.

Before HUG, CANBY and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

Steven J. Harris appeals the district court's grant of summary judgment in favor of the County of Riverside, California (the County). Harris owns a small piece of land in the County which he has used for various business purposes including renting all terrain vehicles (ATVs). He claims that by rezoning his property as residential and imposing bureaucratic roadblocks to his ability to comply with County land use procedures, the County has taken his property in violation of his fifth amendment rights and violated his fourteenth amendment rights to procedural and substantive due process, including depriving him of his liberty to pursue a livelihood. In a thorough opinion, the district court found that these claims were not ripe, and that Harris' constitutional rights were not violated. We need not decide whether the claims directly arising from Harris' allegations of a taking are ripe for judicial review, because under the circumstances of this case, we find that Harris was denied procedural due process and reverse on that ground.

## FACTS AND PROCEDURAL HISTORY

In 1984, Harris purchased approximately three quarters of an acre of desert land in the West Coachella Valley near Palm Springs for $15,000. He intended to use the property for an ATV rental facility. In December 1984 and January 1985, shortly after he acquired the property and began his business, Harris was visited several times by County sheriff's officers in connection with his business operation. In late January 1985, a County Building and Safety inspector informed Harris that his use of the property was improper, and he needed to file a plot plan to receive permission to operate his business.

Harris made several trips to the County's Department of Building and Safety and to its Planning Department to see what he needed to do to comply with County land use requirements. On each trip, County employees told him of an application or fee of which he had not been told on previous visits. Eventually, this amounted to fees of between $4,200 and $6,000 for a plot plan, a conditional use permit, and preservation of the habitat of the fringe-toed lizard. Baffled by the mounting fees he was being asked to pay, Harris researched the County land use codes. He discovered a grandfather clause for nonconforming land uses which he believed applied to him. Harris also read the applicable zoning regulation and concluded that his use of the property was permissible without a conditional use permit. Harris consulted an employee in the Building and Safety Department who agreed with his interpretations.

Over the next few months, Harris received two notices of land use violation from the Building and Safety Department. Harris wrote to the Department and visited both the Planning and the Building and Safety Departments, in an attempt to comply with the County's requirements and to request a waiver of any required fees. He was told "that the County officials took a dim view of [his] development plans, that even were [he] to post the fees that [he] would, without a doubt, have [his] applications denied." His request for a waiver of the fees was refused.

Harris was also frequently visited by County sheriff's officers during this time. The officers never cited him for any violations, but they gave him numerous instructions concerning the operation of his ATV rental business, all of which he followed. On January 28, 1986, Harris was arrested on criminal misdemeanor charges of using more than 200 square feet of outside storage space and renting ATVs without an enclosure. Once again he returned to the Planning Department in an attempt to comply with County requirements, only to discover that his property had been redesignated from CPS (desert land accommodating commercial uses) to residential. He was told that he would have to pay another $2,400 to $3,000 to file an application to change the zoning back to CPS.

The redesignation of Harris' property occurred during consideration of the West Coachella Valley Community Plan which amended the County's state-required General Plan ("General Plan Amendment"). The General Plan Amendment encompassed over one hundred square miles (approximately six hundred thousand acres) and was enacted in December 1985, after a public hearing and approval by the County Board of Supervisors. The County, in compliance with state law, published notice of the public hearing on November 1, 1985. In response to that notice, the Board of Supervisors received a letter written by a local land developer and a Palm Springs city councilman, dated November 5, 1985. The authors requested that the General Plan Amendment be changed to redesignate Harris' property and the immediate

surrounding land as residential, in part to "eliminate a ... motorcycle park which in turn creates a fire, health and safety hazard for the neighbors." The General Plan Amendment enacted in December incorporated this change. Harris received no notice of the change prior to its enactment as part of the General Plan Amendment.

Between March and July 1986, after he had learned that his property had been rezoned, Harris and his wife visited the County's Deputy Planning Director, Planning Director, and Supervising Planners in charge of the community plans team. Harris received a new fee schedule and directions on what he needed to do to comply with County requirements, but again he was unsuccessful in getting any assistance from the Planning Department in filling out the necessary forms. He also investigated the possibility of a "less intense" use of the property to no avail.

Harris then visited the Building and Safety Department and discovered the letter from the local developer and the city councilman requesting that the area of land including Harris' property be redesignated as residential. He tried to meet with Kay Ceniceros, a County supervisor, to discuss the zoning change but was unable to do so. Convinced that further efforts to comply with County requirements would be futile, Harris abandoned his efforts and filed this lawsuit.

Harris filed suit *in pro per* against the County on September 16, 1986. He eventually obtained counsel and filed a third amended complaint alleging a taking of his property in violation of his constitutional and civil rights under the fifth and fourteenth amendments and 42 U.S.C. § 1983 (1982), as well as deprivation of his constitutional rights to due process and to engage in a common occupation. On May 18, 1988, the County filed a motion for summary judgment. Before ruling on the motion, the district court wisely decided that there were genuine issues of fact to be resolved in determining whether any further efforts by Harris to file appropriate applications with the Planning Department would have been futile. Therefore, the court conduct-

ed an evidentiary hearing in front of a jury on this issue. The jury resolved the principal factual issues concerning futility against Harris. On September 1, the court filed its memorandum decision granting the County's motion for summary judgment. Harris filed this timely appeal.

## DISCUSSION

We review the district court's grant of summary judgment de novo to determine whether there are any genuine issues of material fact and whether the court correctly applied the relevant substantive law. *Lake Nacimiento Ranch Co. v. County of San Luis Obispo*, 841 F.2d 872, 875 (9th Cir.1988), *modifying* 830 F.2d 977 (1987), *cert. denied*, 488 U.S. 827, 109 S.Ct. 79, 102 L.Ed.2d 55 (1988). The majority of Harris' claims arise from his allegation that the County took his property without just compensation. The district court concluded that all of these claims were precluded on ripeness grounds.

Harris argues that his claims are ripe. The linchpin of his ripeness argument, and by implication his taking and related claims, is the rezoning of his property from CPS to residential. Harris alleges that the County knew the use Harris was making of his property and rezoned his land in response to that use. Thus, according to Harris, the County reached a final determination as to the uses it would allow on the property, and his taking claims are ripe for judicial review. *See Hoehne v. County of San Benito*, 870 F.2d 529, 533 (9th Cir. 1989) (taking claim was ripe because County's rezoning of property in response to plaintiffs' proposed use reflected County's final decision on how land could be used).

### Procedural Due Process

 Initially we must address Harris' challenge to the validity of the County's decision rezoning his property. He claims that he was denied his procedural due process right to individual notice of the public hearing on the adoption of the General Plan Amendment. The County maintains that this claim arises out of Harris' taking claim and thus is also precluded on ripeness grounds. Procedural due process claims

arising from an alleged taking may be subject to the same ripeness requirements as the taking claim itself depending on the circumstances of the case. *Herrington v. County of Sonoma*, 857 F.2d 567, 569 n. 1 (9th Cir.1988) ("[W]e see no reason, under the circumstances of this case, to apply a different standard to Herrington's procedural due process claim, which, like its equal protection and substantive due process claims, relates to the *process* by which the County reached its conclusion.") (emphasis in original), *modifying* 834 F.2d 1488, 1494–98 (1987), *cert. denied*, —— U.S. ——, 109 S.Ct. 1557, 103 L.Ed.2d 860 (1989); *see Norco Constr., Inc. v. King County*, 801 F.2d 1143, 1145 (9th Cir. 1986) (applying ripeness principles to "claims for inverse taking, and for alleged related injuries from denial of equal protection or denial of due process by unreasonable delay or failure to act under mandated time periods," but recognizing that a separate "claim might also arise when it is clear beyond peradventure that excessive delay in such a final determination has caused the present destruction of the property's beneficial use"). Under the circumstances of this case, we find that Harris' procedural due process claim is not subject to these ripeness requirements.

In asserting a regulatory taking claim, a plaintiff must show "that the regulation has gone so far that it has 'taken' plaintiff's property." *Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1453 (9th Cir.1987) (citing *MacDonald, Sommer & Frates v. County of Yolo*, 477 U.S. 340, 348, 106 S.Ct. 2561, 2565, 91 L.Ed.2d 285 (1986)), *modified on other grounds*, 830 F.2d 968 (1987), *cert. denied*, 484 U.S. 1043, 108 S.Ct. 775, 98 L.Ed.2d 861 (1988). Such a claim is not ripe for judicial review until there has been " 'a final and authoritative determination of the type and intensity of development legally permitted on the subject property.' " *Id.* (quoting *MacDonald*, 477 U.S. at 348, 106 S.Ct. at 2565). Our ripeness inquiry, therefore, "is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury."

*Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 193, 105 S.Ct. 3108, 3120, 87 L.Ed.2d 126 (1985); *accord Herrington,* 857 F.2d at 569.

Harris' procedural due process challenge, although related to his taking claim, does not require that we find the County made "a final and authoritative determination" of the development permitted on Harris' land. Unquestionably, the County's decision rezoning his land deprived Harris of the land's commercial use. As part of his taking claim, Harris alleges that this decision and the County's other actions with regard to his land demonstrate that the County finally and authoritatively took his property. In contrast to Harris' taking claim, however, his procedural due process claim challenges the rezoning decision in isolation, as a single decision with its own consequences, rather than as one in a series of County actions resulting in a taking.

Harris alleges that the County denied him procedural due process by depriving him of the commercial use of his land until he paid the $2,400 to $3,000 nonrefundable fee it charges to apply for an amendment to the General Plan. Unlike his taking claim, Harris' procedural due process claim focuses on the required payment of a substantial, nonrefundable fee to apply to regain the commercial use of his land, as well as the deprivation of that use. Even if the County has not made a final and authoritative determination of the development allowed on Harris' property, he has been deprived of the commercial use of his land and must pay $2,400 to $3,000 to either regain that use, or prompt the County to make a final determination of how he can use the land. The fee and the deprivation of the commercial use of his land amount to actual, concrete injuries which are separate from any taking Harris may have suffered. These injuries thus have already occurred and do not depend on the finality of the County's determination of the permissible uses of his property. Therefore, because Harris' procedural due process claim does not directly arise from, or rely on, his taking claim, we hold that it is not subject to the ripeness constraints applica-ble to regulatory takings, and we may review it.

In reviewing the County's decision, we must first determine whether the County was required to comply with due process. "The requirements of procedural due process apply only to [government] deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Here, we must address two issues before we can apply procedural due process to the County's decision: whether the County's decision 1) was the type of government action to which due process applies and 2) deprived Harris of a protected property interest.

As to the first issue, the County argues, and the district court implicitly held, that the County was under no constitutional due process constraints in promulgating the General Plan Amendment. Citing *Bi-Metallic Inv. Co. v. State Bd. of Equalization,* 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915), the court found that "adoption of a general plan amendment is a legislative act and the Constitution does not require that every individual affected by a legislative determination receive individual notice of such action, even where it results in a deprivation of property." The court and the County maintain that the dictates of procedural due process apply only to adjudicatory or administrative government actions. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (applying procedural due process to an adjudicatory proceeding); *Rogin v. Bensalem Township,* 616 F.2d 680, 692–94 (3d Cir.1980) (applying procedural due process to administrative, but not legislative, actions), *cert. denied,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981).

In determining when the dictates of due process apply, however, we find little guidance in formalistic distinctions between "legislative" and "adjudicatory" or "administrative" government actions. As the Supreme Court impliedly recognized in *Bi-Metallic,* the character of the action, rather than its label, determines whether those

affected by it are entitled to constitutional due process. The question before the Court in *Bi–Metallic* was "whether all individuals have a constitutional right to be heard before a matter can be decided in which *all* are *equally concerned.*" *Bi–Metallic*, 239 U.S. at 445, 36 S.Ct. at 142 (emphasis added). Thus the Court limited its decision to "[g]eneral statutes within the state power" that "appl[y] to more than a few people." *Id.* The Court distinguished its earlier decision in *Londoner v. Denver*, 210 U.S. 373, 385, 28 S.Ct. 708, 713, 52 L.Ed. 1103 (1908), in which it held there was a right to a hearing when "[a] relatively small number of persons was concerned, who were exceptionally affected, in each case upon *individual* grounds," finding "that decision is far from reaching a *general* determination dealing only with the principle upon which all the assessments in a county had been laid." *Bi–Metallic*, 239 U.S. at 446, 36 S.Ct. at 142–143 (emphasis added); *see Developments in the Law—Zoning*, 91 Harv.L.Rev. 1427, 1508–13 (differentiating "legislative" from "administrative" zoning decisions for purposes of determining when due process applies).

We find the present case to be more analogous to *Londoner* than *Bi–Metallic*. The County's consideration of the vast area contemplated by the General Plan Amendment certainly affected a large number of people and would not ordinarily give rise to constitutional procedural due process requirements. Within the County's amendment process, however, the County specifically targeted Harris' property for a zoning change after notice had been published for the General Plan Amendment. The district court made no factual findings on this issue, but the record also supports the conclusion that the County undeniably knew

the use Harris was making of his property when it acted to change the zoning on his land.[1] Under the facts of this case, the County's decision to alter its proposed General Plan Amendment specifically to rezone Harris' land constituted a decision which was distinct from, rather than a part of, approval of the General Plan Amendment. This decision, in contrast to approval of the General Plan Amendment, concerned a relatively small number of persons (Harris and the immediately adjacent landowner) rather than the entire population of the West Coachella Valley. As the California Supreme Court has expressly cautioned, "land use planning decisions less extensive than general rezoning c[an] not be insulated from notice and hearing requirements by application of the 'legislative act' doctrine." *Horn v. County of Ventura*, 24 Cal.3d 605, 613, 596 P.2d 1134, 1138, 156 Cal.Rptr. 718, 722 (1979).

Moreover, this change "exceptionally affected" Harris "on an individual basis" by severely altering the permissible uses of Harris' land. It is certainly debatable whether Harris was entitled to rent ATVs on his land[2] and whether the County would have granted him a conditional use permit for this purpose had he applied for one. By changing the zoning designation on that land, however, one thing was certain: Any commercial use to which the land could legally be put was precluded until Harris paid a substantial nonrefundable fee to apply to have his previous zoning designation reinstated. Moreover, Harris offered evidence that the land is unsuitable for residential use due to strong winds and other harsh environmental conditions that exist on the land for 120 days out of the year. Arguably, then, to make *any* use of his land, Harris must pay a substantial nonrefundable fee.

---

1. We do not decide, however, whether the County must know of the use being made of the property before constitutional due process applies.

2. The district court found that this use was clearly and unambiguously precluded because it was not listed among the unrestricted or restricted uses expressly mentioned in the County's zoning ordinance. Unlike the district court, we are not convinced that the relevant County ordinances prohibited this use. We see no ra-

tional reason to allow the sale or rental of motorcycles or motor scooters that have two horsepower or greater (which is listed as a restricted use) while prohibiting the rental of presumably safer, quieter, less powerful four-wheel vehicles that have less than two horsepower. Because this issue is not properly before us, however, we need not decide it. We note only that an ATV rental facility may be a proper use of Harris' property, with or without a conditional use permit.

We find this situation analogous to the car-towing cases finding city procedures "manifestly defective, in that recovery of a removed vehicle was absolutely conditioned on payment of towing and storage charges." *Huemmer v. Mayor & City Council of Ocean City,* 632 F.2d 371, 372 (4th Cir.1980); *see Stypmann v. City & County of San Francisco,* 557 F.2d 1338, 1343–44 (9th Cir.1977). Similarly here, recovery of any commercial use Harris may make of his property (including the use he was making of it prior to the zoning change) is absolutely conditioned on payment of a $2,400 to $3,000 nonrefundable application fee. Because of its exceptional effect on Harris as a specific, identifiable individual, we believe that the County's decision to rezone Harris' land is the type of government action which is subject to procedural due process constraints.

■ We must also determine whether the County's decision deprived Harris of a protected property interest prior to applying procedural due process. We find that it did. "The right of [an owner] to devote [his] land to any legitimate use is properly within the protection of the Constitution." *Washington ex rel. Seattle Title Trust Co. v. Roberge,* 278 U.S. 116, 121, 49 S.Ct. 50, 51, 73 L.Ed. 210 (1928). Again analogizing to the car-towing cases, "[l]oss of the use and enjoyment of a car deprives the owner of a property interest that may be taken from him only in accordance with the Due Process Clause." *Stypmann,* 557 F.2d at 1342. Loss of the use and enjoyment of his land deprived Harris of no less a property interest. He was therefore entitled to constitutional procedural due process before the County deprived him of that property interest.

■ "Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane,* 339 U.S. at

314, 70 S.Ct. at 657; *see Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 901–02, 47 L.Ed.2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' ") (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). We must determine, therefore, whether the published notice of the public hearing on the proposed General Plan Amendment was sufficient to appraise Harris of the pendency of the zoning change affecting his property, or whether Harris was entitled to individual notice of the change.

When first proposed, the General Plan Amendment suggested no change in the zoning of Harris' property. General notice as required by California statute was published, and according to that notice, a detailed map containing the proposed zoning was available for inspection in County administrative centers. In response to this general notice, the County received the letter requesting that the County rezone a small area of land including Harris' property, in part to eliminate the use of ATVs on that property. The County incorporated this requested change in the proposed General Plan Amendment. Although empowered to do so, *see* Cal. Gov't Code § 65090(c) (West Supp.1989), the County chose not to notify Harris of the change in the Amendment, even though he was virtually the only property owner, other than the developer who requested the change, who was affected by the change. The General Plan Amendment eventually approved by the County Commissioners included this change.

To satisfy procedural due process, "notice must be of such a nature as reasonably to convey the required information." *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657. "The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 315, 70 S.Ct. at 657. Neither the published notice nor the map of the original proposed General Plan Amendment (to which the published notice presumably referred) included the proposed rezoning of Harris' property. The general notice thus

did not reasonably convey the fact that the County intended to change its original proposal and rezone Harris' property, effectively eliminating any commercial use Harris might make of that property. *See Castle v. McLaughlin,* 270 F.2d 448, 451 (D.C. Cir.1959) ("The general notice of change can hardly be construed as notice to the public that the zoning of the particular area involved would be changed in any other way than that specifically proposed.").

We recognize that we must give "due regard for the practicalities and peculiarities of the case" in determining the reasonableness of the notice given. *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657. We do not believe, however, that furnishing Harris with individual notice of the proposed change in the zoning of his property would have been either impractical or burdensome, given that Harris was virtually the only property owner affected by the County's decision to rezone the land in his area, and that the County knew Harris would be exceptionally affected by the change. "Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party ... if its name and address are reasonably ascertainable." *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 800, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180 (1983) (emphasis in original). California now requires just such notice in broader circumstances than those presented here. In addition to general notice by publication, if a proposed general plan amendment "would affect the permitted uses or intensity of uses of real property, notice of the hearing shall also" "be mailed or delivered at least 10 days prior to the hearing to the owner of the subject real property." Cal. Gov't Code §§ 65353(b) and 65091(a)(1) (West Supp.1989). This requirement was enacted in 1988 and thus does not apply to the County's General Plan Amendment at issue here, which was approved in 1985. These statutes, however, strengthen our conviction that individual notice to Harris was not only feasible but necessary.

We are not confronted here with simply altering a zoning border in the proposed General Plan Amendment during the regular course of public hearings, but with targeting a specific tract for a change entirely different from what was originally proposed. Under these circumstances we hold that the published general notice was constitutionally insufficient, and that Harris was entitled to individual notice of the County's plan to rezone his property. Because he did not receive this notice, the County's rezoning decision deprived him of the use of his land without procedural due process. We therefore hold that the portion of the General Plan Amendment rezoning Harris' land from CPS to residential was unconstitutionally enacted and is invalid. We reverse the district court's grant of summary judgment in favor of the County on Harris' procedural due process claim.

Harris' remaining claims all derive from his allegations that the County took his property without just compensation. Harris' ripeness arguments in relation to these claims, as well as the claims themselves, depended on the County's decision rezoning his land, which was invalid *ab initio.* The County's other actions with regard to Harris' land do not support claims for a regulatory taking or related due process violations. Because the zoning of Harris' land, without the invalid amendment, permits commercial uses, Harris' dispute with the County is now limited to whether Harris may properly operate his ATV rental business under the applicable County land use ordinances—a claim which is not properly before us.

*Attorney's Fees*

■ Pursuant to 42 U.S.C. § 1988 (1982), Harris seeks attorney's fees for this appeal. Because we find that Harris' procedural due process rights were violated, Harris is the prevailing party on this section 1983 claim. We therefore award him reasonable attorney's fees on appeal. *See Bilbrey v. Brown,* 738 F.2d 1462, 1472 (9th Cir.1984).

CONCLUSION

Harris was denied procedural due process when the County specifically targeted his property for rezoning without giving him individual notice of its proposed action. The County's decision to rezone his land

was unconstitutionally enacted and therefore is invalid. We emphasize, however, that our holding is limited to the facts of this case and should not be construed to require individual notice to all property owners affected by general zoning changes. Individual notice is required here because the County specifically changed the zoning of Harris' land, upon receiving a request to make the change at least in part to restrict its use, after the County had published notice of a proposed General Plan Amendment which did not include this change. The case is remanded to the district court for further proceedings in accordance with this opinion. The County's other actions affecting Harris' land do not support claims for a regulatory taking or related constitutional violations.

REVERSED and REMANDED.