52 F.3d 334
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re The PARK BEYOND The PARK, a California Limited
Partnership, Debtor.
Jerry CONROW, an individual & partner in Park Beyond The
Park, a California Limited Partnership, Appellant,
v.
CITY OF TORRANCE, Appellee.
 No. 93-56163.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 8, 1995.
Decided April 13, 1995.
 
 Before: BROWNING, D.W. NELSON, and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant/Debtor The Park Beyond The Park, a limited partnership, and Jerry Conrow, its general partner,[1] appeal the bankruptcy appellate panel's ("BAP") decision affirming the bankruptcy court's summary judgment in favor of appellee, the City of Torrance ("Torrance" or "the City"), in the Park's suit stating causes of action under 42 U.S.C. Sec. 1983 and state law. On appeal, the Park claims that the BAP and bankruptcy court erred in dismissing as a matter of law its claims that the City committed substantive and procedural violations of the Due Process Clause, a taking under state and federal law, and a state tort of interference with advantageous business relationships. The Park's claims are based on the City's enactment of an urgency ordinance requiring a conditional use permit ("CUP") for court-related uses of private property. We have jurisdiction under 11 U.S.C. Sec. 158(d), and we affirm.
 
 STANDARD OF REVIEW
 
 3
 We review BAP decisions de novo, applying the clearly erroneous standard to review the bankruptcy court's findings of fact and the de novo standard to the bankruptcy court's conclusions of law. In re Dewalt, 961 F.2d 848, 850 (9th Cir.1992). A grant of summary judgment is reviewed de novo, to determine whether there are any genuine issues of material fact and whether the court correctly applied the relevant substantive law. Harris v. County of Riverside, 904 F.2d 497, 500 (9th Cir.1990). The nonmoving party must designate specific facts showing a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
 
 DISCUSSION
 I. State Inverse Condemnation Claim
 
 4
 In its suit for state inverse condemnation,[2] the Park contends that the enactment of Ordinance 3287 constituted a state regulatory taking because it was an illegitimate exercise of the City's power that caused the Park to lose its vested right to a nonconforming use of its property. See Lake Nacimiento Ranch Co. v. San Luis Obispo Cty., 841 F.2d 872, 877 (9th Cir.1987) (stating that a zoning regulation accomplishes a regulatory taking when it fails to advance substantially legitimate state interests or it denies all beneficial uses of a property), cert. denied, 488 U.S. 827 (1988). We find this argument to be meritless.
 
 A. Legitimate Purpose
 
 5
 The Park cannot satisfy the first prong of the regulatory takings test, because passage of the ordinance was not an illegitimate use of the State's police power. The City enacted the ordinance because it concluded that court-related uses of property are people-intensive and thus increase parking requirements. Because there were no provisions for court-related uses in areas other than public-use zones, negotiations by Los Angeles County for courtroom space in privately owned buildings suggested the need for a conditional use permit process to ensure adequate parking at such facilities. The ordinance allowed for case-by-case determinations premised on a baseline requirement of one parking space per 150 square feet of floor space. Therefore, we hold that the City's gap-filling regulation of parking connected with court-related uses advanced the City's legitimate interest in protecting the public welfare. Cf. Crown Motors v. City of Redding, 283 Cal.Rptr. 356 (Ct.App.1991) (upholding urgency ordinance as a legitimate exercise of the municipality's regulatory power).
 
 B. Loss of All Beneficial Use
 1. Vested Right
 
 6
 The Park apparently claims that loss of a vested right to modify its building shell for courtrooms took away all beneficial use of its property--the alternative test for a regulatory taking. However, the Park had no vested right to a nonconforming, court-related use. "[T]he property owner necessarily expects the uses of his property to be restricted, from time to time, by various measures newly enacted by the State in legitimate exercise of its police powers...." Healing v. California Coastal Comm'n, 27 Cal.Rptr.2d 758, 766-67 (Ct.App.1994), review denied (Cal. June 30, 1994). The state need not compensate an owner for regulatory effects if "the proscribed use interests were not part of his title to begin with." Lucas v. South Carolina Coastal Council, 112 S.Ct. 2886, 2899 (1992).
 
 
 7
 Although California recognizes vested rights to particular land uses created by estoppel when landowners rely to their detriment on validly issued permits for a particular land use, see Avco Community Developers v. South Coast Regional Comm'n, 553 P.2d 546, 550 (Cal.1976), cert. denied, 429 U.S. 1083 (1977); Blue Chip Properties v. Permanent Rent Control Bd., 216 Cal.Rptr. 492, 498 (Ct.App.1985), the Park did not have such a vested right. The Park's permit merely granted it a variance, in an area zoned for heavy manufacturing, to construct a mixed-use project for high-tech offices and industrial/commercial space. Any use not specifically enumerated for a particular zone is prohibited unless a variance for that use is granted through the CUP process. See, e.g., Torrance Municipal Code Sec. 91.31.1 (listing specific uses for the heavy manufacturing zone, after the statement that "[n]o building ... shall be ... used for any purpose other than the following"). Neither the Park's permit nor any associated planning documents included a proposal for courtrooms or court-related uses. At the time that the City granted the Park's CUP, the code established different parking requirements for several specific uses, including professional offices, manufacturing facilities, and places of public assembly. See, e.g. Torrance Municipal Code Secs. 93.2.4-29. The code listed "offices for attorneys, architects, accountants, managers and administrators" as the defining examples of the "business and professional offices" category. Torrance Municipal Code Sec. 93.2.6. Courthouses have never been designated as general office uses.
 
 
 8
 Furthermore, even if the City had implicitly promised the Park that it could use its property for court purposes, the Park did not rely to its detriment on that promise, as required for an estoppel claim to a vested right. See Avco, 553 P.2d at 550. No funds were expended to modify the shell for courtrooms, and no lease for parking was finalized prior to the rejection of the Park's application for a CUP. Whatever expectations the Park had of finalizing a deal for a court lease that would save it from the lender's looming foreclosure, no hard cash was shelled out to support them. We therefore hold that the Park did not have a state-created vested right to a nonconforming, court-related use of its property.
 
 2. Beneficial Use
 
 9
 In addition, the ordinance did not eliminate all beneficial use. A taking does not occur merely because an owner is denied the most beneficial use of property. See Goldblatt v. Town of Hempstead, 369 U.S. 590, 592-93 (1962). Here, the ordinance regulated the court-related aspect of the market, but many other uses were available. The ordinance did not prohibit court-related uses on its face: it merely conditioned such use on the provision of adequate parking. Conrow continued to assert that the Park satisfied the parking requirement even under the new ordinance. The Park's brokers had sought unsuccessfully to market the property for a number of years, and there was no assurance that the Park would have consummated a courthouse lease without passage of the ordinance. Accordingly, we affirm the BAP's ruling on the inverse condemnation claim. The passage of Ordinance 3287 did not constitute a taking for which the City must pay compensation.
 
 
 10
 Although Park has often confused its due process claims with a federal takings claim in its brief to this court and in its arguments here and below, no federal takings claim is actually before this court. Thus, we need not address this issue here.
 
 
 11
 II. Section 1983 Procedural and Substantive Due Process Claims
 
 
 12
 A section 1983 plaintiff must prove deprivation of a constitutional right by action taken under color of state law. See Lake Country Estates v. Tahoe Regional Planning Agency, 440 U.S. 391, 399 (1979); 42 U.S.C. Sec. 1983.
 
 A. Procedural Due Process
 
 13
 The City's passage of the urgency measure did not deprive the Park of property rights by failing to honor its procedural due process rights to adequate notice and a meaningful opportunity to be heard. See Sinaloa Lake Owners Ass'n v. City of Simi Valley, 882 F.2d 1398, 1405 (9th Cir.1989), cert. denied, 494 U.S. 1016 (1990). As discussed earlier, passage of the regulatory ordinance in accord with the urgency provisions was a legitimate exercise of legislative power rationally related to the City's goal of preventing parking congestion. In addition, passage of the ordinance as an urgency measure was fully in accord with the City Charter. See Torrance Municipal Code, City Charter Secs. 724, 726 (permitting immediate adoption by a five-sevenths vote and immediately effective enactment of urgency measures to preserve the public welfare, when the ordinance includes a statement of facts supporting urgency). The City discussed its concerns that a lease might be consummated before the City had enacted regulations to fill the court-use gap, and it included a statement in the ordinance about those concerns. See Ordinance 3287. Because the ordinance created a new category of use which had not been granted previously as a condition to the Park's CUP, the Park had no right created by state law to individualized notice and hearing pursuant to the City's provisions for modifying conditions on CUPs. We also find no merit in the Park's claim that it was entitled to individualized process because the ordinance was an adjudicatory act targeted at a small number of entities rather than a generally applicable legislative act. See Harris v. County of Riverside, 904 F.2d 497, 501-02 (9th Cir.1990). The Park was not in an analogous position to the plaintiff in Harris: the ordinance was not a spot rezoning affecting its property in particular, and it neither eliminated a preexisting use of that property nor imposed fees for reinstatement of such use. Cf. id. at 502.
 
 
 14
 Accordingly, we hold that the BAP did not err in affirming the bankruptcy court's grant of summary judgment to the City on the Park's procedural due process claim.
 
 B. Substantive Due Process
 
 15
 The Park's substantive due process claim is also without merit. The essence of a substantive due process claim is that the government's action depriving a person of a liberty or property interest is fundamentally unfair, motivated by malice, or not justifiable as an exercise of the government's responsibility for the public welfare; as such, it constitutes an abusive, irrational, arbitrary, and capricious use of government power. See Pennell v. City of San Jose, 485 U.S. 1, 12 (1988) (conduct that is "arbitrary, discriminatory, or demonstrably irrelevant" to the legislative goal violates substantive due process); Sinaloa, 882 F.2d at 1407-09. To survive summary judgment, the Park must demonstrate that the City "could have had no legitimate reason for its decision." Kawaoka v. City of Arroyo Grande, 17 F.3d 1227, 1234 (9th Cir.) (quotations, citations, and emphasis omitted), cert. denied, 115 S.Ct. 193 (1994).
 
 
 16
 Although the Park's claim is not clearly articulated, we construe it to suggest that the City's enactment of Ordinance 3287 as an urgency measure violated substantive due process because the City failed to establish justification for an emergency action targeted against a particular individual's property, which resulted in a loss of commercial value. See, e.g., Sinaloa, 882 F.2d at 1410. Here, however, Torrance's adoption of an urgency measure, in a public forum which included both an explanation of the necessity for the ordinance and participation by interested parties such as Conrow and his counsel, is markedly different from the abuse of power suggested in Sinaloa. Compare id. at 1408 (government decided to breach plaintiffs' dam, but kept it secret from them without any legitimate reason, deceived them by telling them that it would not be breached, and ultimately breached the dam even though the emergency that purportedly necessitated the breach was already over). The Park has offered no evidence showing that the City abused its governmental powers or engaged in a ruse to deprive the Park of its property rights. Nor is it clear that the Park can show actual damage as a result of the CUP process, because other uses of its property were still open to it. There is no basis for the Park's substantive due process claim.
 
 III. Legislative Immunity
 
 17
 Finally, the Park argues that the City cannot be immune from liability for the enactment of the ordinance pursuant to California Government Code section 818.2, which immunizes government entities from tort liability for injuries resulting from the enactment of legislation, because the provision applies to the exercise of discretionary functions, rather than to mandatory duties imposed by statute. Nunn v. California, 677 P.2d 846, 849-51 (Cal.1984). The Park does not articulate clearly which mandatory duty subjected the City to liability when it enacted Ordinance 3287, but it apparently claims that the City had a mandatory duty in this instance to follow the procedures for the enactment of regular ordinances and/or the procedures for modifying conditions attached to the Park's CUP. As already discussed, these claims are meritless, because the City properly adopted the ordinance pursuant to its urgency procedures and as part of its discretionary legislative function for developing generally applicable regulations. See Nunn at 850 & 850 n. 5.
 
 CONCLUSION
 
 18
 The City's enactment of Ordinance 3287 under its urgency provisions served the legitimate state purpose of alleviating potential parking problems that the City considered imminent. Creation of a new CUP process that established court-related parking requirements, which were adjustable on a case-by-case basis, was a reasonable means of achieving the City's goal. The Park did not have a state-created vested right in a nonconforming use, and other beneficial uses of its property remained available to it. Thus, application of the ordinance to the Park did not obligate the City to provide just compensation on the inverse condemnation claim. The ordinance was not an unconstitutional violation of procedural or substantive due process. In addition, the City had legislative immunity from the Park's state tort claim. Accordingly, the judgment of the bankruptcy appellate panel is
 
 
 19
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 These entities are hereinafter referenced collectively as "Park" unless referring to Conrow specifically
 
 
 [2]
 Park's original complaint in state court included both a petition for mandamus and an inverse condemnation claim. Park removed its claims against Torrance to bankruptcy court after filing for bankruptcy. In response to Torrance's motion to dismiss, abstain, or remand, Park voluntarily dismissed the mandamus action as futile because its lenders had initiated foreclosure against the property. Thus, the state inverse condemnation claim remained before the bankruptcy court pendent to the Park's federal due process claims