# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CRODA INC., | § | |
| | § | No. 349, 2021 |
| Plaintiff Below, | § | |
| Appellant, | § | Court Below: Court of Chancery |
| | § | of the State of Delaware |
| v. | § | |
| | § | C.A. No. 2020-0677 |
| NEW CASTLE COUNTY, | § | |
| | § | |
| Defendant Below, | § | |
| Appellee. | § | |

Submitted: May 11, 2022
Decided: July 22, 2022

Before **SEITZ**, Chief Justice; **VALIHURA**, **VAUGHN**, **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices, constituting the Court *en Banc*.

Upon appeal from the Court of Chancery. **AFFIRMED**.

Richard A. Forsten, Esquire, Pamela J. Scott, Esquire, Elizabeth S. Fenton, Esquire, SAUL EWING ARNSTEIN & LEHR LLP, Wilmington, Delaware, Stephen A. Swedlow, Esquire (*argued*), Athena D. Dalton, Esquire, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Chicago, Illinois, *for Plaintiff Below, Appellant Croda, Inc.*

Mary A. Jacobson, Esquire (*argued*), Nicholas J. Brannick, Esquire, NEW CASTLE COUNTY OFFICE OF LAW, New Castle, Delaware, *for Defendant Below, Appellee New Castle County.*

**SEITZ**, Chief Justice:

Under New Castle County's Unified Development Code, heavy industrial uses were permitted as of right on land zoned for heavy industry or HI. On August 27, 2019, New Castle County Council adopted Ordinance 19-046 amending the Code. The Code now states that property owners with HI-zoned property must obtain a special use permit from the County before expanding Heavy Industry use of their property.

A year later, Croda filed a complaint in the Court of Chancery to enjoin enforcement of Ordinance 19-046. It claimed, among other things, that Ordinance 19-046 was invalid because the Ordinance title did not put Croda and the public on notice of the substance of the zoning amendment in violation of state and county law and federal due process guarantees. The Court of Chancery dismissed Croda's state law claims as untimely under the state sixty-day statute of repose and rejected its constitutional claims because Croda did not have a vested right in a zoning category.

On appeal, Croda claims that the Court of Chancery erred because the alleged lack of proper notice tolled the statute of repose, and it did not have to show a vested right to state a procedural due process claim. We affirm the Court of Chancery's judgment. The statute of repose is not subject to tolling. And while our reasoning is different than that of the Court of Chancery, Croda's procedural due process claim

2

fails because those protections do not apply to the County's legislative acts adopting the Ordinance.

## I.

Croda owns and operates the Atlas Point chemical plant in New Castle County, Delaware.[1] Under the County's Unified Development Code or UDC, the Atlas Point property is zoned HI. On April 30, 2019, County Council introduced Ordinance 19-046, entitled: "To Amend New Castle County Code Chapter 40 ('Unified Development Code'), Article 3 ('Use Regulations') and Article 33 ('Definitions') Regarding Landfills."[2] Section 1 of Ordinance 19-046 added a 140-foot height limitation for solid waste landfills and set forth criteria to assess permissible height increases up to the new maximum height. Section 3 added "Solid Waste Landfills" to the "Heavy Industry" uses category in the definition of Industrial Uses.[3]

---

[1] The facts are taken from the Court of Chancery's opinions: *Croda, Inc. v. New Castle County*, 2021 WL 5023646 (Del. Ch. Oct. 28, 2021) ("*Croda I*") and *Croda, Inc. v. New Castle County*, 2021 WL 5027005 (Del. Ch. Oct. 28, 2021) ("*Croda II*").

[2] App. to Opening Br. at A035.

[3] "Heavy Industry" is a term used in the UDC's general use table to refer to specific land uses, including "construction, mining, manufacturing, transportation, and public utilities . . . [and] chemical manufacturing . . . ." UDC Section 40.33.270(C). This should not be confused with the HI zoning district.

3

Section 2 of Ordinance 19-046—the section Croda challenges—amended Table 40.03.110B covering permitted uses in zoning districts.[4] The amendment struck the "Y" in the table, which meant that Heavy Industry uses were permitted as of right on HI-zoned property, and replaced it with an "S", meaning that all landowners of HI-zoned property must obtain a special use permit before proceeding with a Heavy Industry use:

---

[4] The table shows which uses (on the vertical or Y-axis) are permitted in each zoning district (on the horizontal or X-axis). UDC Section 40.03.110. The table uses symbols to describe whether a use is permitted in a zoning district. UDC Section 40.03.100. "'Y' indicates a permitted use, where the use is permitted as a matter of right[;]" "'N' indicates a prohibited use[;]" and "'S' indicates a use permitted only if a special use is approved . . . ." *Id.* The land use categories on the Y-axis, such as the "Heavy Industry" category of Industrial Uses, are defined in UDC Division 40.33.200. For example, UDC Section 40.33.270(C) defines Heavy Industry use as including chemical manufacturing.

| Table 40.03.110A. General Use Table | | | | | | | | | Table 40.03.110B. General Use Table | | | | | | | Table 40.03.110C. General Use Table | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Zoning District (Urban and Suburban-Transition Character) Y=permitted, N=prohibited, L=limited review, S=special use review, A=accessory | | | | | | | | | Zoning District (Suburban and Special Character) | | | | | | | Additional Standards (all districts) | |
| Land Use | TN | ST | MM | UN | OR | CR | BP | I | CN | S... | SE | NC | HI | EX | SR | Parking | Limited & Special Use Standards |
| ... | | | | | | | | | | | | | | | | | |
| Industrial Uses | | | | | | | | | Industrial Uses | | | | | | | Industrial Uses | |
| Heavy industry | N | N | N | N | N | N | N | N | N | N | N | N | S | N | N | Table 40.03.522 | Section 40.03.323. |
| ... | | | | | | | | | | | | | | | | | |

Because of this amendment, HI-zoned property like the Atlas Point facility can expand Heavy Industry uses such as chemical manufacturing only "if a special use is approved" by the County.[5]

On July 27, 2019, the County published the Ordinance title in *The News Journal*. The County also published information about upcoming public hearings on the proposed Ordinance. The County Planning Board held a public hearing and voted in favor of the Ordinance. Then, the County Council approved the Ordinance

---

[5] UDC Section 40.03.100. Special use review requires the landowner to obtain a special use permit before engaging in the land use that is subject to special use review. The landowner must show that the proposed land use satisfies several standards. UDC Section 40.31.430. Further, the special use permit can be revoked if the land use violates any conditions of the permit. UDC Section 40.31.432.

after an August 27, 2019 public hearing.  Croda did not appear at either hearing.  On August 31, 2019, the County published another notice in *The News Journal*, stating that County Council adopted Ordinance 19-046.[6]

Croda filed a complaint in the Court of Chancery on August 17, 2020.  The complaint sought, along with other relief, a declaratory judgment that Ordinance 19-046 was invalid, and a permanent injunction barring enforcement.  Croda argued that the Ordinance title was misleading and failed to put Croda and the public on notice of all the changes to HI zoning.  After the parties filed competing motions for summary judgment, the Court of Chancery issued two orders—one addressing Croda's state law claims, and the other addressing Croda's Section 1983 claims.

For the state law claims, the court held they were time-barred under 10 *Del. C.* § 8126—a statute of repose that bars any challenge to the legality of an ordinance brought more than sixty days after publication of the notice notifying the public that the ordinance was adopted.[7]  The County published the notice of adoption for Ordinance 19-046 on August 31, 2019, but Croda filed its complaint almost a year later, outside the sixty-day window.[8]

---

[6] On January 18, 2020, the County published a notice for proposed Ordinance 20-008, that would have restricted Section 2 of Ordinance 19-046 to landfills.  After a public hearing on May 5, 2020, no further action was taken.  It appears that County Council did not anticipate that the UDC amendments in Ordinance 19-046 covered industrial uses beyond landfills.  It also appears that the later effort to limit its unintended effect failed after public resistance.

[7] *Croda I*, 2021 WL 5023646, at *4.

[8] *Id.*

For the Section 1983 claims, the Court of Chancery held that Croda was required to show a protected property interest before it could succeed on a procedural or substantive due process claim.[9] According to the court, Croda had no protected property interest because it could not demonstrate a vested right to develop its property under the former HI zoning classification.[10] The court granted the County's cross-motion for summary judgment on all counts.[11]

Croda has appealed the Court of Chancery's summary judgment ruling. We review the court's summary judgment ruling *de novo*.[12] We also review questions of statutory interpretation and constitutional law *de novo*.[13]

II.

A.

Under 10 *Del. C.* § 8126(a):

> No action, suit or proceeding in any court . . . in which the legality of any ordinance, code, regulation or map, relating to zoning, or any amendment thereto . . . is challenged, whether by direct or collateral attack or otherwise, shall be brought after the expiration of 60 days from the date of publication in a newspaper of general circulation in the county or municipality in which such adoption occurred, of notice of the adoption of such ordinance, code, regulation, map or amendment.

---

[9] *Croda II*, 2021 WL 5027005, at *3–5.
[10] *Id.* at *5–6.
[11] *Croda I*, 2021 WL 5023646, at *5; *Croda II*, 2021 WL 5027005, at *7.
[12] *Salzberg v. Sciabacucchi*, 227 A.3d 102, 112 (Del. 2020).
[13] *Delaware Solid Waste Auth. v. Delaware Dep't of Nat. Res. and Envtl. Control*, 250 A.3d 94, 105 (Del. 2021).

Croda's complaint for declaratory and injunctive relief challenging Ordinance 19-046 is a "suit" challenging "the legality of any ordinance" and is therefore covered by Section 8126.[14]  On August 31, 2019, the County published the notice of adoption of Ordinance 19-046.  Croda did not file suit until August 17, 2020.  Thus, the statute bars Croda's suit.

Croda argues that the Ordinance failed to comply with the titling requirements of 9 *Del. C.* § 1152 and New Castle County Council Rule 2.2.1.  As a result of the alleged titling defects, Croda argues, Croda and County residents were not put on notice of how the Ordinance impacted HI-zoned property.  As for Croda, it claims to have been ignorant of the HI zoning amendments affecting its property until just before it filed suit.  Thus, according to Croda, the sixty-day period should be tolled until it became aware of how the Ordinance adversely impacted its property.

If Section 8126 were a statute of limitations, tolling might be possible.  A statute of limitations focuses on the remedy, and not the right, to bring the cause of action, encouraging plaintiffs to bring known claims in a timely manner.[15]  Section

---

[14] *Council of South Bethany v. Sandpiper Dev. Corp., Inc.*, 1986 WL 13707, at *1 n.1 (Del. Ch. Dec. 8, 1986) ("[The plaintiff] seeks injunctive relief and a declaratory judgment that the Zoning Ordinance (and Section 504) are invalid—relief that brings Sandpiper's claim clearly within the ambit of § 8126.").

[15] *See California Pub. Emps. Retirement System v. ANZ Securities, Inc.*, 137 S. Ct. 2042, 2049 (2017) ("Statutes of limitations are designed to encourage plaintiffs 'to pursue diligent prosecution of known claims.'" (quoting *CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014)); *Equity Corp. v. Groves*, 53 A.2d 505, 507 (Del. Ch. 1947) ("As a general rule, the statute of limitations merely affects the complainant's remedy in the State in which the suit is brought, and not the right of the matter involved in the action.").

8126, however, is a statute of repose.[16] When a statute of repose runs, it extinguishes the remedy and the right to bring any claim within the scope of the statute.[17] Stated another way, a statute of repose is jurisdictional and cannot be waived.[18] Although a statute of repose can produce harsh results, in the land use context it ensures "prompt resolution of land use challenges[]" because "[u]ncertainty about the validity of a zoning decision is disruptive to the community as well as the developer."[19] A statute of repose overrides tolling arguments because the "object of a statute of repose [is] to grant complete peace to defendants[.]"[20] Croda's claims

---

[16] *Murray v. Town of Dewey Beach*, 67 A.3d 388, 391 (Del. 2013) (recognizing Section 8126 as "a statute of repose" and concluding that "the Court of Chancery lacked jurisdiction to hear those claims because, under § 8126, they were extinguished 60 days after the Town gave public notice of those actions."); *Farmers for Fairness v. Kent Cty. Levy Court*, 2013 WL 3333039, at *5 (Del. Ch. July 1, 2013) ("Section 8126 is a statute of repose . . . .").

[17] *Id.*; *see also ANZ Securities, Inc.*, 137 S. Ct. at 2051 ("The purpose and effect of a statute of repose, by contrast, is to override customary tolling rules arising from the equitable powers of courts. By establishing a fixed limit, a statute of repose implements a 'legislative decisio[n] that as a matter of policy there should be a specific time beyond which a defendant should no longer be subjected to protracted liability.'" (quoting *CTS Corp.*, 573 U.S. at 8)); *Cheswold Volunteer Fire Co. v. Lambertson Const. Co.*, 489 A.2d 413, 421 (Del. 1984) ("While the running of a statute of limitations will nullify a party's remedy, the running of a statute of repose will extinguish both the remedy and the right. The statute of limitations is therefore a procedural mechanism, which may be waived. On the other hand, the statute of repose is a substantive provision which may not be waived because the time limit expressly qualifies the right which the statute creates.").

[18] *Cheswold Volunteer Fire Co.*, 489 A.2d at 421 ("Moreover, because the statute of repose is a substantive provision, it relates to the jurisdiction of the court; hence 'any failure to commence the action within the applicable time period extinguishes the right itself and divests the . . . court of any subject matter jurisdiction which it might otherwise have.'" (quoting *First Savs. & Loan Assoc. v. First Fed. Savs. & Loan Assoc. of Hawaii*, 547 F.Supp. 988, 995 (D. Hawaii 1982) (alteration in original)).

[19] *Id.* (citing *Sandpiper Dev. Corp.*, 1986 WL 13707, at *1).

[20] *ANZ Securities, Inc.*, 137 S. Ct. at 2052.

for insufficient notice and defective titling, even if correct, would not toll the sixty-day period in Section 8126.

The case relied on by Croda does not call for a different result. In *In re Kent County Adequate Public Facilities Ordinances Litigation* ("*APFO*"), the plaintiffs were allowed to challenge an ordinance more than sixty days after it was enacted.[21] But, as the Court of Chancery observed, the facts in *APFO* were "unique" and set in an "unusual context."[22] The ordinance in question did not become effective until seven months later when the General Assembly adopted additional legislation.[23] Had the plaintiffs challenged the ordinance during the sixty-day period, their claims would be premature because the ordinance was not yet effective.[24] The court recognized that the General Assembly could not have intended to bar challenges to the ordinance in this peculiar setting.[25] Here, by contrast, it was possible for Croda to file a timely and ripe challenge to Ordinance 19-046.

While the *APFO* case involved an unusual situation and unique facts, the weight of Delaware authority strictly construes Section 8126 and does not create exceptions for perceived unfairness or an inequitable result. For instance, in *Murray*

---

[21] 2009 WL 445611, at *6 (Del. Ch. Feb. 11, 2009).
[22] *Id.*
[23] *Id.*
[24] *Id.* at *6–7 ("Thus, given the unique confluence of the County's adoption of what, in essence, was a legal nullity until the General Assembly acted to repeal 9 *Del. C.* § 9124(b) and the strictures of the statute of repose, Petitioners would have found themselves in the impossible position of never having been able to challenge the ordinance . . . .").
[25] *Id.*

*v. Town of Dewey Beach*, this Court applied Section 8126 to turn away a challenge to a resolution approving a settlement agreement that essentially rezoned certain property.[26] The Court concluded that alleged defects in amending the zoning laws—amending the laws through a resolution approving a settlement agreement instead of adopting an ordinance—did not affect the sixty-day statute of repose.[27] As we held, "there is a strong policy favoring prompt resolution of land use challenges" and the statute of repose "reflects that policy by providing an extremely short period during which an interested party may challenge a zoning decision."[28]

The Court of Chancery has also strictly construed Section 8126. In *Sterling Property Holdings, Inc. v. New Castle County*, the Court of Chancery rejected the plaintiff's argument that Section 8126 did not apply because the plaintiff "had no knowledge of the detrimental effect of the ordinance until its application . . . ."[29] As the court held, the statute of repose does not have exceptions for procedural irregularities during ordinance adoption. The court also relied on its decision in *Council of South Bethany v. Sandpiper Development Corp.*, where the court commented that "no authority" was cited for the proposition that "whenever a claim is advanced that a zoning ordinance is invalid by reason of having been enacted in

---

[26] 67 A.3d at 389–91.
[27] *Id.* at 391.
[28] *Id.*
[29] 2004 WL 1087366, at *4 (Del. Ch. May 6, 2004).

violation of statutory procedural requirements, that claim falls outside the scope of any statute of limitations . . . and both authority and logic compel the precise opposite conclusion."[30]

Section 8126 is a statute of repose. The sixty-day deadline to bring claims challenging the legality of an ordinance is not subject to tolling. The Court of Chancery held correctly that it lacked jurisdiction to consider Croda's untimely state law claims.

B.

Under 42 U.S.C § 1983, a landowner can bring claims against the government for deprivation of federal constitutional rights. The Fifth and Fourteenth Amendments to the United States Constitution prohibit the government from depriving "any person of life, liberty, or property, without due process of law." What process is due for a deprivation and what personal and property interests are protected are critical inquiries in any due process claim. If procedural due process rights attach, the affected party with a protected personal or property interest is entitled to notice and an opportunity to be heard.[31]

Croda claims that the County deprived it of a protected property right to the free use of its land when it adopted Ordinance 19-046 without first providing Croda

---

[30] *Sandpiper Dev. Corp.*, 1986 WL 13707, at *2.
[31] *Mathews v. Eldridge*, 424 U.S. 319, 332–33 (1976).

procedural due process protections. According to Croda, the misleading Ordinance title deprived it of proper notice and a hearing before the County adopted the Ordinance. The Court of Chancery found that Croda did not have a protected property interest in the existing zoning classification. We need not reach this issue, however, because Croda's procedural due process claim suffers from another fundamental defect—procedural due process protections do not apply to legislation of general applicability.[32]

As early as 1915, the United States Supreme Court in *Bi-Metallic Investment Co. v. State Board of Equalization*, rejected a landowner's claim that he had a due process right to a hearing before the State Board of Equalization voted to increase the tax valuation of all property in Denver by forty percent.[33] The Supreme Court held that the U.S. Constitution does not require "due process" before passing laws.[34] Due process protections apply only when the state acts against individuals "in each case upon individual grounds," when some characteristic unique to the citizen is involved.[35] As Justice Holmes wrote:

> Where a rule of conduct applies to more than a few people, it is impracticable that every one should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals,

---

[32] *Unitrin, Inc. v. Am. Gen. Corp.*, 651 A.2d 1361, 1390 (Del. 1995) ("this Court may affirm on the basis of a different rationale than that which was articulated by the trial court.").
[33] 239 U.S. 441 (1915).
[34] *Id.* at 445.
[35] *Id.* at 446.

sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule. . . . There must be a limit to individual argument in such matters if government is to go on.[36]

A more recent case from the United States Court of Appeals for the Third Circuit is illustrative. In *Rogin v. Bensalem Township*, the Bensalem Township Board of Supervisors amended its zoning code to reduce the allowable density in a residential zoning district.[37] A developer brought a procedural due process claim challenging zoning code amendments that were of general applicability. In rejecting the developer's claim, the court found that "it is unnecessary for the courts to intervene" when "the relatively large number of persons affected works to ensure that the legislature will not act unreasonably towards the populace."[38] "[T]he general theory of republican government" is not founded on "due process through individual hearings and the application of standards of behavior."[39] Rather, it is based on "elective representation, partisan politics, and the ultimate sovereignty of the people" to vote unfaithful legislators out of office.[40] As the court held, the Township Supervisors were acting in a legislative capacity when they adopted the

---

[36] *Id.* at 445; *see also Eastlake v. Forest City Enters., Inc.*, 426 U.S. 668 (1976) (city charter provision requiring proposed land use changes to be ratified by fifty-five percent of electorate does not violate due process rights of landowner applying for zoning change).
[37] 616 F.2d 680, 683 (3d Cir. 1980).
[38] *Id.* at 693–94.
[39] *Id.* at 694.
[40] *Id.*

amended zoning ordinance, meaning due process did not require notice and a hearing.[41]

Relying on the Supreme Court's decision in *Bi-Metallic*, the Court of Chancery has followed the same path. In *Salem Church (Delaware) Associates v. New Castle County*, the General Assembly amended the Delaware Code to make stale subdivision and land development applications subject to current environmental standards.[42] A developer with an older approved development plan claimed that the law violated its procedural due process rights to be heard and to contest the new law.[43] The court held:

> Salem Church's allegation that it was not properly given notice or a pre-deprivation hearing is without merit. In passing SB 143, the General Assembly was, not surprisingly, acting in a legislative capacity. Legislative acts, though, cannot form the basis for a procedural due process claim. . . . [The legislation] did not target only French Park. It was general in nature, applying to "[a]ll subdivision or land development applications heretofore or hereafter" filed that have failed to receive final approval within five years from the date of application. In short, Salem Church was entitled to no more notice or opportunity to be heard than anyone else.[44]

The cases Croda relies on do not alter our view that procedural due process does not apply to legislative acts of general application. In *Nasierowski Brothers*

---

[41] *Id.; see also Shellburne, Inc. v. New Castle Cty.*, 293 F. Supp. 237, 244 (D. Del. 1968) ("the members of the County Council were acting within the scope of legitimate legislative activity when they voted to rezone plaintiff's property . . . .").

[42] 2006 WL 2873745, at *1 (Del. Ch. Oct. 6, 2006).

[43] *Id.* at *3.

[44] *Id.* at *14 (quoting 73 Del. Laws Ch. 33) (alteration in original).

*Inv. Co. v. City of Sterling Heights*, the court recognized that procedural due process protections do not apply to legislative acts affecting the public as opposed to an individual:

> Governmental determinations of a general nature that affect all equally do not give rise to a due process right to be heard. But, when a relatively small number of persons are affected on individual grounds, the right to a hearing is triggered. Falling into that latter category is the situation where, during the amendment process, a governmental unit singles out and specifically targets an individual's property for a zoning change after notice of a general plan of amendment has been published.[45]

In *Harris v. County of Riverside*, the court also pointed out the distinction between acts affecting the public in general and those acts aimed at an individual or small group.[46] The court applied procedural due process protections in that case because "the County specifically targeted Harris' property for a zoning change after notice had been published for the General Plan Amendment."[47] The zoning amendment "concerned a relatively small number of persons (Harris and the immediately adjacent landowner) rather than the entire population of the West Coachella Valley."[48] And in *Moreland Properties, LLC v. City of Thornton*, the zoning ordinance affected only eight properties and the court did not address whether procedural due process applies to legislative acts.[49] The court also stated that the

---

[45] 949 F.2d 890, 896 (6th Cir. 1991).
[46] 904 F.2d 497, 501–02 (9th Cir. 1990).
[47] *Id.* at 502.
[48] *Id.*
[49] 559 F.Supp.2d 1133, 1142 (D. Colo. 2008).

zoning ordinance "might well pass constitutional muster under different circumstances, as where competent evidence suggests that such effective zoning changes affected more than just a handful of readily ascertainable landowners."[50]

County Council enacted Ordinance 19-046 by legislative act.[51] It was not aimed at Croda and its industrial property because it applies to all HI-zoned property in the County.[52] Procedural due process protections do not apply to legislative acts of general application. Finally, we agree with the County that Croda did not fairly raise a substantive due process claim in its opening brief.[53]

## III.

We affirm the Court of Chancery's judgment.

---

[50] *Id*. at 1161.

[51] *Shellburne, Inc. v. Buck*, 240 A.2d 757, 758 (Del. 1968) (explaining that the exercise of County Council's zoning power is legislative in character); *Willdel Realty, Inc. v. New Castle Cty.*, 281 A.2d 612, 614 (Del. 1971) (zoning is a legislative act).

[52] Indeed, it appears that County Council did not appreciate the reach of Ordinance 19-046 at the time of adoption, as it later considered an amendment to restrict its scope.

[53] On appeal Croda limited its due process claim to procedural due process. Opening Br. at 23 ("Croda is still entitled to relief because the County's actions deprived Croda of its procedural due process rights in violation of 42 U.S.C. § 1983 . . . ."); *id.* at 24–25 (describing the elements of a procedural due process claim and discussing related case law); *id.* at 33 ("Croda is not bringing a vested rights claim, but, rather, a procedural due process claim."). Croda only uses the words "substantive due process" twice in its opening brief—once in the "nature and stage of the proceedings" section of its brief, and again in a footnote in its argument section. *Id.* at 2, 29 n.11. Both times, Croda simply describes how it raised a substantive due process claim below. *Id.* "The merits of any argument that is not raised in the body of the opening brief shall be deemed waived and will not be considered by the Court on appeal." Sup. Ct. R. 14(b)(vi)(3). "If an appellant fails to comply with these requirements on a particular issue, the appellant has abandoned that issue on appeal irrespective of how well the issue was preserved at trial." *Roca v. E.I. du Pont de Nemours and Co.*, 842 A.2d 1238, 1242 (Del. 2004) (citing *Murphy v. State*, 632 A.2d 1150, 1152 (Del. 1993)).