**John S. HERRINGTON, David S. Herrington and Quail Hill Ranch, a partnership, Plaintiffs/Appellees/Cross–Appellants,**

v.

**COUNTY OF SONOMA, Defendant/Appellant/Cross–Appellee.**

**Nos. 86–2620, 86–2728.**

United States Court of Appeals, Ninth Circuit.

Sept. 13, 1988.

ORDER AMENDING AMENDED OPIN-
ION, DENYING PETITION FOR RE-
HEARING AND REJECTING SUG-
GESTION FOR REHEARING EN
BANC

Before CHOY, SNEED and TANG,
Circuit Judges.

### ORDER

A majority of the panel which heard this case has voted to deny the petition for rehearing and the full panel has rejected the suggestion for rehearing en banc. However, the Opinion filed on December 24, 1987 as amended on February 10, 1988, is further amended as follows:

At 834 F.2d 1488, 1494–1498, Section "A. Ripeness" is replaced by the following:

### A. *Ripeness*

The County contends that the Herringtons' claims are not ripe for adjudication. We note that the trial judge submitted the ripeness issue to the jury and that the jury implicitly found that the Herringtons' claims were ripe. However, the district court erred in submitting this issue to the jury; ripeness is a question of law which must be determined by the court. *See Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1453 n. 4 (9th Cir.1987). We review the ripeness issue de novo. *Id.*

In the area of land use, the doctrine of ripeness is intended to avoid premature adjudication or review of administrative action. A constitutional challenge to land use regulations is ripe when the developer has received the planning commission's " 'final definitive position regarding how it will

apply the regulations at issue to the particular land in question.'" *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 106 S.Ct. 2561, 2568, 91 L.Ed.2d 285 (1986) (quoting *Williamson Planning Commission v. Hamilton Bank*, 473 U.S. 172, 191, 105 S.Ct. 3108, 3119, 87 L.Ed.2d 126 (1985)). In *Kinzli*, we interpreted *Williamson* and *MacDonald* to require a final decision by the government which inflicts a concrete harm upon the plaintiff landowner. *Kinzli*, 818 F.2d at 1454. Our decisions in this area have also clarified that we will apply the same ripeness standards to equal protection and substantive due process claims.[1] *See Kinzli*, 818 F.2d at 1455–56; *Norco Construction, Inc. v. King County*, 801 F.2d 1143, 1145 (9th Cir.1986). A final decision requires at least: "(1) a rejected development plan, and (2) a denial of a variance." *Kinzli*, 818 F.2d at 1454 (citing *Williamson*, 473 U.S. at 187–90, 105 S.Ct. at 3117–18). A landowner may avoid the final decision requirement if attempts to comply with that requirement would be futile. *Id.* A property owner cannot rely on the futility exception until he or she makes at least one meaningful application. *Id.* at 1454–55.

There is some controversy as to whether the Herringtons submitted even one development application to the County, and as to whether their proposed 32–lot subdivision was conclusively rejected. The County contends that the Herringtons' subdivision application was not complete because it did not contain an Environmental Impact Report ("EIR"). Instead of submitting an EIR, plaintiffs submitted a series of environmental studies. However, it is apparent from testimony by the County staff that submission of an EIR would have made no difference in the County's inconsistency determination. The County also characterizes the Board's inconsistency determination as a "preliminary" rather than a final decision. Nevertheless, it is clear that the 32–lot proposal was conclusively rejected when the inconsistency determination was made by the Board of Supervisors. Former

County Planner Toby Ross testified that the Board's inconsistency determination constituted a final decision with respect to the Herringtons' proposed subdivision. He further testified that the only way for the Herringtons to obtain approval for their project, other than going to court, was to seek a General Plan amendment. The Herringtons, Ross stated, would have had no chance of obtaining a General Plan amendment. Michael Morrison, who was the County Subdivision Planner at the time of the Herringtons' application, gave similar testimony. Morrison, stated that the Herringtons' only recourse after the inconsistency determination was to seek a General Plan amendment. He did not consider this to be a practical alternative.

■ This testimony demonstrates that the first *Kinzli* requirement—a rejected development plan—has been satisfied by the Herringtons. Although we do not believe that the Herringtons' development application was formally complete, we agree with the Herringtons' contention that the 32–lot development, as it was originally proposed, was definitively rejected by the County. Once the inconsistency determination was made, it would have been futile for the Herringtons to pursue their application for the 32–lot development. The fact that the Herringtons abandoned their application at a "preliminary" stage (i.e., after the inconsistency determination) does not affect our conclusion that a rejected development plan has been obtained in this case. The purpose of the Sonoma County consistency determination process is to enable a developer to determine at a preliminary stage whether to proceed with a particular development application. The County's determination of inconsistency effectively told the Herringtons to stop the application process in regard to the 32–lot proposal. Under the circumstances of this case it would be inappropriate to require the Herringtons to have formally completed a hopeless application.

■ The Herringtons did not apply for a variance. Nevertheless, the second *Kinzli*

---

1. Further, we see no reason, under the circumstances of this case, to apply a different standard to Herrington's procedural due process claim, which, like its equal protection and sub-

stantive due process claims, relates to the *process* by which the County reached its conclusion.

factor—application for a variance—need not be met in this case because pursuit of a variance was not a legally viable option. Five months after rejecting the 32–unit subdivision proposal, the Board adopted the Specific Plan, which rezoned the Herrington's property to agricultural use. This designation only allowed residential development with a minimum lot size of 100 acres. The testimony of two County planning witnesses indicated that the *only* means of obtaining approval of the 32–lot proposal was through a General Plan amendment. This testimony finds support in Cal.Gov't Code § 65906, which prohibits the granting of a variance for a use not expressly authorized by the zoning regulation that governs the land in question. Residential development in lots under 100 acres is not an agricultural use, and thus could not be authorized by variance under section 65906. Indeed, the County has at no time asserted that application for a variance was a viable option.[2]

In sum, we hold that the Herringtons have satisfied the *Kinzli* "final decision" ripeness requirement. The County conclusively rejected the Herringtons' 32–lot development proposal and then proceeded to drastically limit the allowable development. Efforts to complete the development application, and application for a variance, would have been futile. In so holding, we emphasize that mere allegations by a property owner that it has done everything possible to obtain acceptance of a development proposal will not suffice to prove futility. *See Williamson,* 473 U.S. at 188, 105 S.Ct. at 3117; *Kaiser Development Co. v. City and County of Honolulu,* 649 F.Supp. 926, 942 (D.Haw.1986). Our holding is based upon repeated and uncontradicted testimony by County officials that the Herringtons' 32–lot proposal could not have obtained approval. The finality of this determination allows evaluation of the Herrington's challenge to the County's decisionmaking process.

■ Our conclusion that further attempts to obtain acceptance of the development proposal would have been futile precludes the County's suggestion that the Herringtons must nonetheless reapply to determine the exact permitted level of development. In *MacDonald,* which involved a regulatory taking claim, the Court required reapplication to meet the finality requirement. *See* 106 S.Ct. at 2566. However, a taking claim requires proof that substantially all economically viable use of the property has been denied. *See First English Evangelical Lutheran Church v. County of Los Angeles,* — U.S. —, 107 S.Ct. 2378, 2388, 96 L.Ed.2d 250 (1987); *MacDonald,* 106 S.Ct. at 2568–69. Thus, "a prerequisite to its assertion is a final and authoritative determination of the type and intensity of development legally permitted on the subject property." *MacDonald,* 106 S.Ct. at 2568–69; *see Kinzli,* 818 F.2d at 1453.

■ We can fully review the adequacy of notice prior to decision (the procedural due process claim), the rationality of the inconsistency determination (the substantive due process claim), and the alleged dissimilar treatment accorded similarly situated landowners (the equal protection claim) from the point at which further pursuit of the rejected proposal is deemed futile. For purposes of evaluating the County's decisionmaking process in rejecting the proposal, the Herringtons have received a " 'final definitive [decision] regarding how [the County Board] will apply the regulations at issue to the particular land in question.' " *MacDonald,* 106 S.Ct. at 2568 (quoting *Williamson,* 473 U.S. at 191, 105 S.Ct. at 3119). That is, their proposal has been definitively rejected.

Also, the last sentence of the amended majority opinion is further amended to read as follows:

The Herrington's request for attorneys' fees on this appeal will be considered upon submission of proper documentation.

---

**2.** We have previously stated that a plaintiff must submit at least one meaningful application for a variance before arguing that subsequent applications would be "futile." *See Lake Nacimiento Ranch v. County of San Luis Obispo,* 830 F.2d 977, 980–81 (9th Cir.1987); *Kinzli,* 818 F.2d at

1455 n. 6. However, the concept of "futility" as developed in those cases refers to situations in which the facts of the case indicate that a variance would not be granted. By contrast, we see no reason to require the pursuit of relief that cannot be granted.

The full court has been advised of the suggestion for rehearing en banc and the amendments to the Amended Opinion. No judge of the court has objected to the amendments or requested a vote on the suggestion for rehearing en banc. Fed.R. App.P. 35(B).

With the Opinion so amended the petition for rehearing is denied and the suggestion for rehearing en banc is rejected.