944 F.2d 908
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
eo BIANCHI, Helen Bianchi, Plaintiffs-Appellants,
v.
CITY OF CUPERTINO, James Sisk, Defendants-Appellees.
 No. 89-16196.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 9, 1991.
Decided Sept. 12, 1991.
 
 Before WALLACE, Chief Judge, GOODWIN and FLETCHER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Plaintiffs Leo and Helen Bianchi appeal the district court's grant of defendant City of Cupertino's motion for summary judgment and denial of their own motion for summary judgment. They claim that Cupertino denied them substantive and procedural due process and equal protection of the laws, exercised a de facto taking of their property in violation of the 5th and 14th amendments, and deprived them of a "vested" land use right, by its action merging into one 8.6-acre parcel seventeen lots depicted as residentially subdivided on a 1917 subdivision map. The district court, by way of a summary order, held 1) that the 1917 subdivision map did not create a vested right to convey the individual lots as delineated in the map, and 2) that the Bianchis had established only a diminution in value and not a taking, and therefore granted Cupertino's motion for summary judgment.
 
 
 3
 We affirm the district court's holding that, under California law, the 1917 subdivision map did not create a vested right. Thus, to the extent that the Bianchis challenge the extinguishment of that map, in and of itself, as a taking and a violation of their constitutional rights, their claim fails on the merits. To the extent that the Bianchis claim that the merger of their lots amounts to an unconstitutional taking of their land, and a violation of substantive and procedural due process and equal protection, we find that their claims are unripe.
 
 BACKGROUND
 
 4
 In 1968, the Bianchis purchased 8.6 acres of land in Santa Clara County which had been divided into seventeen residential lots on a subdivision map approved by the Santa Clara County Board of Supervisors and duly recorded under the laws existing in 1917. The Bianchis' lots were part of a larger, 85-acre area known as Inspiration Heights. In 1980, Cupertino annexed Inspiration Heights. In 1982, the Bianchis approached Cupertino to obtain a building permit for lot 309 and were informed that Cupertino could not issue a building permit for the lot because the lot did not conform to Cupertino's Hillside General Plan amendment to its General Plan ("Hillside General Plan").[1] Cupertino also informed the Bianchis that their lots would have to be merged and resubdivided in accordance with current land use regulations unless there was an amendment to the General Plan.[2]
 
 
 5
 The Bianchis then instigated a General Plan amendment application to consider an alternative "Land Use Intensity Plan and Circulation System" for a 15-acre sub-area of Inspiration Heights including their 8.6 acres. The proposed amendment would have recognized the Bianchis' lots as delineated on the 1917 subdivision map. At the subsequent public hearing on the application before the Planning Commission, numerous citizens stated their opposition to the application, citing environmental geologic, and aesthetic concerns. The Planning Commission, in its role as advisory committee to the City Council, recommended that the amendment not be adopted and that merger proceedings be initiated within the entire Inspiration Heights area. The City Council subsequently voted to deny the amendment, to initiate a city-funded road and traffic circulation study for Inspiration Heights, and to direct the City Planning Director to initiate merger proceedings of all lots within Inspiration Heights which did not conform to the General Plan. The planning director thereafter initiated and completed the process of merging all lots within Inspiration Heights which met the criteria for merger, with the result that the Bianchis' remaining lots were merged into a single parcel.
 
 
 6
 In accordance with the merger ordinance, the planning director gave the Bianchis notice of the proposed merger and an opportunity for an informal meeting to present evidence why the merger ordinance should not be applied to their lots. The Bianchis declined to participate in that process. The Bianchis also declined to seek a resubdivision under the current General Plan and instead filed a complaint in federal district court on September 12, 1983. In June, 1984, the district court granted Cupertino's motion for Pullman absention to allow for the state courts to resolve issues of state law. The Bianchis then filed a Petition for Writ of Administrative Mandamus in the California Superior Court, which denied the writ on the merits. The California Court of Appeal affirmed the Superior Court judgment, not on its merits, but on the basis that the Bianchis had failed to invoke and exhaust their available administrative remedies by failing to avail themselves of the opportunity to meet with the planning director. The California Supreme Court denied the Bianchis' petition for review without discussion and thus, the case returned to the district court. The Bianchis moved for a partial summary judgment on the issue of liability and Cupertino made a cross-motion for summary judgment. The district court granted Cupertino's motion and denied the Bianchis' from the bench and subsequently issued a summary order. The Bianchis appeal that order.
 
 DISCUSSION
 
 7
 A grant of summary judgment is reviewed de novo to determine, viewing the evidence in the light most favorable to the nonmoving party, whether there existed any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989). Whether the Bianchis' constitutional claims are ripe for review presents a question of law affecting our subject matter jurisdiction. Shelter Creek Dev. Corp. v. City of Oxnard, 838 F.2d 375, 377 (9th Cir.), cert. denied, 488 U.S. 851 (1988). We consider this question de novo. Herrington v. County of Sonoma, 857 F.2d 567, 568 (9th Cir.1988), cert. denied, 489 U.S. 1090 (1989).
 
 A. Vested Rights Claim
 
 8
 To the extent that the Bianchis seek only a declaration that they have a vested right to proceed on the basis of the 1917 subdivision map, and that Cupertino's conduct violated that right, their claim appears to be ripe. We find, however, nothing in California law to suggest that the Bianchis possessed a vested right. We therefore affirm the district court's holding on that issue.
 
 
 9
 California law governs the question of whether the Bianchis possessed a "vested right." Lakeview Development v. South Lake Tahoe, 915 F.2d 1290, 1295 (9th Cir.1990), cert. denied, 111 S.Ct. 2890 (1991). "It is well established that there is no federal Constitutional right to be free from changes in land use laws." Id. Rather, "[the vested rights] claim is ... a species of governmental estoppel." Id. California has recognized the creation of vested rights where a developer has acquired a building or other sufficiently specific development permit and has "performed substantial work and incurred substantial liabilities in good faith reliance upon [the] permit." Avco Community Developers, Inc. v. South Coast Regional Commission, 17 Cal.3d 785, 132 Cal.Rptr. 386 (1976), cert. denied, 429 U.S. 1083 (1977). Although the vast majority of cases have involved a claimed right to develop property in a certain manner, rather than merely to subdivide the property as the Bianchis seek here, California courts have applied similar principles to subdivision in at least two cases. See Tosh v. California Coastal Commission, 99 Cal.App.3d 388, 160 Cal.Rptr. 170 (1979) (because construction of water system and storage tanks was done without necessary permits, it did not constitute "substantial expenditures and reliance" upon a tentative subdivision map so as to create a vested right to subdivide); Gisler v. County of Madera, 38 Cal.App.3d 303, 112 Cal.Rptr. 919 (1974) (owners of land which had been legally subdivided into 2.5-acre residential parcels and recorded in 1913 were not deprived of a vested right to use and sell those separate parcels by passage of a zoning measure providing for exclusive agricultural use of the land and prohibiting sales of parcels of less than 18 acres).
 
 
 10
 We find Gisler to be directly on point and persuasive. In Gisler the California Court of Appeals held that "in the absence of expenditure of funds or improvement of the subdivision properties, appellants acquired no vested right by the mere recordation of the subdivision map." 38 Cal.App.3d at 309. The Bianchis, like the property-owners in Gisler, have alleged no expenditures in reliance on the subdivision map, apart from the purchase of the land itself. We find unpersuasive the Bianchis' attempts to distinguish the 1907 "draw and record" Subdivision Map Act at issue in Gisler from the 1915 "government review and approval" Subdivision Map Act at issue in the present case. Accordingly, we hold that Gisler is controlling and the Bianchis can claim no "vested right" to the subdivision of their property under California law.
 
 B. Ripeness
 
 11
 Even absent a vested right, the Bianchis may state a valid takings claim if, as they allege, Cupertino's regulation of their property denies them "substantially all economically viable use." See Herrington, 857 F.2d at 571 (citing First English Evangelical Lutheran Church v. County of Los Angeles, 482 U.S. 304 (1987)). An as-applied challenge under the takings clause requires the landowner to establish that the government has (1) taken the landowner's property by imposing regulations that go too far (2) without tendering just compensation for the taking. Del Monte Dunes v. City of Monterey, 920 F.2d 1496, 1500 (9th Cir.1990) (citing Kinzli v. City of Santa Cruz, 818 F.2d 1449, 1453 (9th Cir.), modified on other grounds, 830 F.2d 968 (9th Cir.1987), cert. denied, 484 U.S. 1043 (1988)).
 
 
 12
 Both the taking element and the compensation element must be ripe before the claim is justiciable. Id. In the present case, the panel is concerned only with whether the taking element is ripe.[3] "The taking component of an as applied claim is not ripe until the local government issues a final decision on the application of land use regulations to the affected property." Id. at 1501 (citing Austin v. City and County of Honolulu, 840 F.2d 678, 679-80 (9th Cir.), cert. denied, 488 U.S. 852 (1988)).
 
 
 13
 This circuit has recognized two areas of concern that illuminate and define that finality requirement. First, the landowner must demonstrate that the development or plan formally sought has been rejected. Here, it is apparent that the Bianchis' desire either to develop or sell as separate units the seventeen lots as separate residential subdivisions has been rejected conclusively by Cupertino through its action merging the lots and recording their merger. The inquiry does not end there, however, because "no answer is possible [as to whether a regulation has 'gone too far'] until a court knows what use, if any, may be made of the affected property." MacDonald, Sommer & Frates v. Yolo County, 477 U.S. 340, 350 (1986). "Finality also requires the local government to determine authoritatively the type and intensity of development that land use regulations will allow on the subject property; such a determination helps a court to evaluate whether regulation of the subject property is excessive by identifying the extent of the regulation." Del Monte Dunes, 920 F.2d at 1501. Thus, a landowner may need to resubmit modified proposals to the local government that satisfy the government's objections to the development as initially proposed so that those parameters can be made clear. Id.[4]
 
 
 14
 Because the Bianchis have failed to seek a resubdivision in accordance with the current General Plan, there has been no authoritative decision on precisely how many residential lots could be created from their 8.6-acre parcel. While there are several suggestions in the record that, given the slope of their acreage, they may not be able to create more than one buildable lot, that has not been determined conclusively by Cupertino.[5] While this circuit recognizes a limited futility exception to the requirement that a landowner obtain a final decision regarding the application of land use regulations to the affected property, Kinzli, 818 F.2d at 1454, a heavy burden is on the landowner to show by more than mere allegations, that further efforts would be futile. See Traweek v. City and County of San Francisco, 920 F.2d 589, 594 (9th Cir.1990). That burden has not been met in this case, since the Bianchis offer no reasons other than the impossibility of their maintaining all seventeen of their lots as such, in support of their claim that further efforts to clarify the extent of possible development would be futile.
 
 
 15
 The Bianchis make much of the fact that they are not claiming a right to build on the separate subdivisions, but only a right to maintain their separate legal existence so as to be able to convey the properties separately. It is clear, however, that the ripeness inquiry is equally applicable to regulatory decisions regarding the number of subdivisions that may be had on a property as it is to whether and how a landowner may build on his or her property. See Herrington v. County of Sonoma, 834 F.2d 1488 (9th Cir.1987), amended, 857 F.2d 567 (1988); Nelson v. City of Selma, 881 F.2d 836, 838 (9th Cir.1989).
 
 
 16
 The Bianchis' insistence on treating this as a case involving a "taking" of seventeen separate lots is fallacious. " 'Taking' jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated. In deciding whether a particular governmental action has effected a taking, this Court focuses on ... the parcel as a whole." Penn. Central Transp. Co. v. New York City, 438 U.S. 104, 130-31 (1978). Here, the Bianchis purchased the 8.6-acre parcel as a unit, Cupertino's decisions have treated it as a unit, and the land now exists, as a matter of California law, as a single parcel. Thus, the Bianchis' argument that the finality requirement has been met for purposes of ripeness as to each lot, because it is clear and final that the lots have been extinguished as they existed on the 1917 map, must fail.
 
 
 17
 Under the law of this circuit, the same finality requirement for ripeness of a taking claim applies to as-applied substantive due process and equal protection challenges to land use regulations. Herrington v. Sonoma County, 857 F.2d at 569; Southern Pacific v. City of Los Angeles, 922 F.2d at 507. Likewise, where a procedural due process claim relates to the process by which the governing body reached its actions resulting in the taking, the same ripeness inquiry applies. Herrington, 857 F.2d at 569, n. 1; Harris v. County of Riverside, 904 F.2d 497, 500 (9th Cir.1990) (citing Herrington for the proposition that procedural due process claims may be subject to the same ripeness requirement where they arise from the alleged taking, but finding that the procedural claim was sufficiently distinct from the takings claim to escape the ripeness requirements). Here, the procedural due process claim and the damages alleged to flow from it are not sufficiently separable. Therefore, the procedural due process claim is likewise unripe.
 
 CONCLUSION
 
 18
 We AFFIRM the district court's holding that the Bianchis have no vested right in the continued vitality of subdivisions created by a 1917 map. The remaining claims are not ripe. We therefore REMAND to the district court to dismiss for lack of subject matter jurisdiction that portion of its order reaching the merits of the takings claims.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by the Ninth Circuit Rule 36-3
 
 
 [1]
 The stated purpose of the Hillside General Plan is to address the environmentally and aesthetically sensitive nature of Cupertino's hillside area. In response to those concerns, the Plan adopts a "slope density" approach, which provides that as the slope of the land increases, the allowable development density decreases
 
 
 [2]
 In 1980, the California State Legislature adopted a statute whereby cities could, by ordinance, provide for the merger of legal lots of record where any one contiguous parcel was under common ownership and was substandard under the applicable land use regulations. Cal.Gov.Code § 66424.2. Pursuant to § 66424.2, and in recognition that "paper subdivisions" (such as the Bianchis') which did not conform to current zoning regulations existed in the hillside areas, Cupertino passed a merger ordinance providing in relevant part:
 If any one of two or more contiguous parcels or units held by the same owner does not conform with the adopted General Plan and existing zoning regulations so as not to permit its development, and at least one parcel or unit has not been developed with a building for which a building permit is required, then such parcels shall be considered as merged for the purpose of this chapter. The method of merger shall be determined by the Planning Director to meet the requirements of the zoning chapter and this chapter.
 Cupertino Municipal Code §§ 18-1.1001 et seq. It is undisputed that the Bianchis' lots were subject to merger under the terms of the ordinance in that they were contiguous, in common ownership, undeveloped, and did not conform to Cupertino's General Plan and slope density requirements.
 
 
 [3]
 The compensation component of a taking claim is not ripe until the local government refuses to compensate the landowner for the taking. Del Monte Dunes, 920 F.2d at 1506, citing MacDonald, Sommer & Frates v. County of Yolo, 477 U.S. 340, 351-53 (1986). A landowner must seek compensation from the state if adequate procedures are available. Kinzli, 818 F.2d at 1455. This circuit has recognized, however, that prior to First English, 482 U.S. 304, California law did not permit landowners to seek compensation for a regulatory taking through an action in inverse condemnation; their sole remedy was to seek invalidation of the offending regulations through mandamus or injunctive relief, which the Bianchis have done. Since California's compensation procedures were inadequate when the alleged taking occurred, the Bianchis have met the compensation component of the ripeness inquiry. Del Monte Dunes, 920 F.2d at 1507
 
 
 [4]
 Had the Bianchis made a facial challenge to the merger ordinance or the state statute, the question of ripeness would be more complex since neither this circuit nor the Supreme Court has decided whether the first, "finality" prong of the ripeness inquiry applies to such facial challenges. See Southern Pacific v. City of Los Angeles, 922 F.2d 498, 506 n. 9 (9th Cir.1990). However, despite references in their brief to a facial challenge, we find nothing in the Bianchis complaint challenging either the state's merger statute or Cupertino's ordinance on its face
 
 
 [5]
 As a practical matter, the failure to ascertain the extent of permissible development makes it impossible for this court to assess whether the Bianchis have been deprived of all economically viable use of their property or have merely suffered a diminution in value