**Henricus P. BEEKWILDER, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 96–183L.**

United States Court of Federal Claims.

Dec. 26, 2002.

Ronald A. Zumbrun, Sacramento, CA, for plaintiff.

Kristine Sears Tardiff, General Litigation Section, Environment & Natural Resources Division, Department of Justice, Washington, D.C., with whom were Thomas L. Halkowski, Senior Trial Attorney, and Lois J. Schiffer, Assistant Attorney General, for defendant.

## OPINION

SMITH, Senior Judge.

This matter is before the court on defendant's Motion to Dismiss plaintiff's claim for just compensation under the Fifth Amendment for the regulatory taking of real property. Defendant contends that plaintiff's claims should be dismissed for lack of jurisdiction pursuant to Rules of the Court of Federal Claims ("RCFC") 12(b)(1), or in the alternative, summary judgment should be granted for the defendant pursuant to RCFC 56(c). After reviewing the briefs and hearing oral argument, the court hereby GRANTS defendant's motion.

### FACTS

Plaintiff, Henricus P. Beekwilder, entered into a partnership in December of 1987, that, doing business as Vista Homes, purchased sixty-three (63) lots of residential real estate property in the City of Auburn, Placer Coun-

ty, California, collectively known as "Vista del Valle Unit No. 4." The land was zoned for low-density residential housing, and the partners planned to develop the property in three phases.

In April of 1988, a project manager with the Sacramento District of the U.S. Army Corps of Engineers ("Corps") began investigating a suspected Clean Water Act ("CWA") Section 404[1] violation at the Vista del Valle subdivision development. Following the Corps' initial inspection, a cease and desist letter was issued to one of plaintiff's partners, Mr. John Rizzo, on June 10, 1988 informing him that a Section 404 permit was required prior to the commencement of such construction. On September 27, 1988, the Corps notified Mr. Rizzo that an individual permit application was needed for the Vista del Valle project due to the Corps' determination that nationwide permit[2] authorization was not appropriate. The Corps received an individual permit application signed by Mr. Rizzo on November 15, 1988, that sought approval to discharge approximately 20,000 cubic yards of fill material for residential construction.

A consultant hired by plaintiff and his partners transmitted by letter dated March 3, 1989, a final delineation of the wetlands on the property. The consultant also informed the Corps that Phase II of the development would proceed because that portion of the development could be completed without causing any impact to wetlands. The Corps confirmed the accuracy of the wetland delineation submitted by the consultant and further acknowledged that Phase II construction could proceed without a Section 404 permit. Plaintiff's consultants subsequently submitted additional data and analysis indicating that the wetland impact associated with Phase I construction was limited to one acre rather than 4.2 acres, as previously believed. The Corps concurred and determined that it was appropriate under the circumstances to issue an after-the-fact nationwide permit to authorize the fill of wetlands during Phase I construction. This

action thereby resolved the existing violation of the CWA and Section 404 that had resulted from the fill of wetlands without a permit.

During the aforementioned dealings between the Corps and plaintiff's partnership, the twenty-one (21) lots that constituted the Phase I portion of the development were improved and sold by September of 1989. Phase II also proceeded and by February of 1990, all eighteen (18) lots were improved and sold for a price ranging from $70,000 to $75,950 per lot. Despite the completion of Phases I and II, the Section 404 individual permit application submitted in November of 1988, remained pending before the Corps until October 24, 1989, when plaintiff telephoned the Corps and requested that the application be held in abeyance. The Corps agreed to hold the permit application in abeyance for one month, however it reiterated that an individual permit would be required to place additional fill in the wetlands. When no further action was taken by plaintiff's partnership with respect to the individual permit application, the application was withdrawn by the Corps.

In August of 1991, plaintiff purchased the interests of his partners and became the sole owner of the remaining twenty-four (24) lots slated for development during Phase III. This was done by assuming the partnership liabilities in exchange for its assets, thus dissolving the partnership and leaving Mr. Beekwilder as the owner of the remaining unsold lots in the Vista del Valle subdivision. The Corps received no further inquiries regarding development at Vista del Valle until August of 1993, when the City of Auburn issued a letter stating that it was in the process of reviewing a pre-development application for additional development at the site. The proposed development plan had been submitted to the City of Auburn by the plaintiff in July of 1993. The submission contained a new design seeking development approval for only ten (10) lots. In response to the inquiry, the Corps notified the City of

---

1. 33 U.S.C. § 1344 (1994).

2. A nationwide permit is a general permit which authorizes discharge or fill activities throughout

the country with minimal constraints. *See* 33 C.F.R. § 330.1.

Auburn that a permit would be required to develop the ten (10) lots. On September 6, 1993, plaintiff submitted a pre-discharge notice to the Corps indicating his plans to construct a road through the wetland area of the remaining undeveloped Vista del Valle property in order to develop ten (10) housing lots on the uplands area of the property. This new site plan differed from the original plan for Phase III, which had called for the development of all twenty-four (24) lots.

Mr. Beekwilder's pre-discharge notice to the Corps was accompanied by a preliminary layout illustrating the location of the ten (10) housing lots, a wetland boundary, and a wetland area that would be filled for the road crossing and for one of the proposed housing lots. The preliminary layout also showed a remaining "wetland area" in addition to a 7000 square foot area in the southeast corner adjacent to the wetland that was to be graded and used for wetlands. Subsequent information received from plaintiff's consultants revealed that the proposed development was projected to impact 0.32 acre of wetland and that plaintiff would create 0.10 acre of wetland to mitigate for this impact. In a letter dated November 8, 1993, the Corps authorized Mr. Beekwilder's proposed road crossing project and additional fill of a residential lot under a nationwide permit. The authorization was conditioned upon plaintiff's mitigation in the form of excavating 0.10 acre so as to grade it level with the existing wetlands on the site. Subsequently, the City of Auburn approved plaintiff's proposed development plan for a ten (10) lot project and zoning of open space for the remainder. Thus, Phases I and II received permits, and Phase III as modified by the plaintiff received permission to develop. However, the modified Phase III was never acted upon by the plaintiff.

The Auburn City Council, on December 12, 1994, passed an ordinance that rezoned the fourteen (14) lot area, Lot B, portion of the Vista del Valle subdivision property from Single Family Residential to Open Space Conservation. This local governmental restriction reserves the fourteen (14) lot wetland area as an Open Space Conservation area. This local ordinance was enacted and

signed by the mayor approximately sixteen (16) months prior to the filing of plaintiff's complaint in the present action.

On September 5, 1995, nearly two years following the Corps authorization letter, the Corps received a telephone call from plaintiff inquiring whether he could obtain a statement, for tax purposes, from the Corps that his remaining property could not be developed because it is wetland. The Corps responded in a letter dated September 15, 1995, stating that any activity involving excavation or fill in the wetlands area shown as "Lot B" on plaintiff's maps would require a Section 404 permit. Plaintiff then requested additional information regarding required mitigation for development on "Lot B" in a letter dated September 20, 1995. The Corps responded in a telephone call on September 28, 1995, that it could not inform plaintiff what mitigation would be required without reviewing Mr. Beekwilder's proposal and consulting with other resource agencies. The Corps also stated that the mitigation ratio could be anywhere from 1:1, 2:1 or 3:1 depending upon the type, value, and status of the wetlands involved.

Plaintiff then requested information in a letter dated March 7, 1996, as to whether specific guidelines exist that determine required mitigation ratios. The Corps received a telephone call from Mr. Beekwilder on March 25, 1996, regarding the questions addressed in his letter of March 7, 1996. The Corps informed plaintiff during the telephone call that no set guidelines exist for mitigation ratios and that such ratios are determined following fact specific inquiries. The Corps suggested that for planning purposes plaintiff should employ a 2:1 ratio. During the course of the conversation, plaintiff was also informed by the Corps of the existence of a wetland mitigation bank in Placer County.

This mitigation bank, Wildlands, Inc., is approved by the Corps and as of February 26, 1997, had credits available for purchase. Wildlands' price list for the same time period demonstrates that credits could be purchased in the range of $52,000 per acre to $70,000 per acre. Utilizing the 5.4 acre number provided for planning purposes, the total cost to plaintiff of purchasing mitigation credits

would have been approximately $280,800 to $378,000. On March 26, 1996, the Corps sent plaintiff a letter again informing plaintiff that mitigation ratios are determined on a case-by-case basis. An approximate acreage of 5.4 was provided for planning purposes as to the amount of wetland mitigation. The Corps received no further inquiries from plaintiff regarding the Section 404 permit application process required in order to fill his remaining property. Mr. Beekwilder neither requested a pre-application consultation to discuss the specifics of his proposal to develop his remaining property, nor did he submit a permit application to the Corps to fill the fourteen (14) lots. Rather, on April 8, 1996, plaintiff filed his complaint in this court.

## DISCUSSION

Plaintiff's complaint asserts that the United States, through the actions of the Corps, under Section 404 of the CWA, has taken his property without just compensation in violation of the Fifth Amendment.[3] Plaintiff alleges that the Corps refuses to grant a permit for the development of the remaining fourteen (14) lots unless plaintiff purchases and dedicates offsite land as wetlands in mitigation for the wetlands that would be filled due to the development. Plaintiff also contends that the mitigation cost to him is economically unfeasible and effectively precludes him from developing the remainder of his property, which thereby denies him use of that property. Further application to the Corps, according to plaintiff, would be futile given that the cost of required mitigation would exceed the value of the subject property.

## I. JURISDICTION

The Tucker Act grants this court jurisdiction over monetary claims against the United States. *See* 28 U.S.C. § 1491. The Act states in pertinent part,

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

The Tucker Act "does not create any substantive right enforceable against the United States for money damages .... The Act merely confers jurisdiction in the event that a substantive right to sue the government already exists." *Berry v. United States*, 27 Fed.Cl. 96, 100 (Fed.Cl.1992) (citing *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)).

Assuming this court has jurisdiction over a claim, procedural limitations still exist upon the availability of the court as a forum. One such condition is the prudential requirement that a claim be ripe for review. A plaintiff's failure to present a ripe dispute is a defect that goes to the court's jurisdiction to adjudicate the cause of action. *See Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725, 733–42, 117 S.Ct. 1659, 137 L.Ed.2d 980 (1997); *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 190–93, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). Furthermore, "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957).

## II. STANDARD OF REVIEW

RCFC 12(b)(1) authorizes dismissal of a complaint if, assuming the truth of all allegations, jurisdiction over the subject matter is lacking. When ruling upon a motion to dismiss for lack of jurisdiction, all facts must be assumed as true and construed in the light

---

3. U.S. Const. amend. V. The Takings Clause of the Fifth Amendment provides "nor shall private property be taken for public use without just compensation." *Id.* A "regulatory taking" may occur when government action, although not occupying or encroaching physically upon private property, still limits the property's use to such an extent that a taking occurs. *Pax Christi Memorial Gardens v. United States*, 52 Fed.Cl. 318, 319 n. 1 (2002) (citing *Palazzolo v. Rhode Island*, 533 U.S. 606, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001)).

most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Allen v. United States*, 46 Fed.Cl. 677, 680 (2000).

When the issue of jurisdiction has been raised in the context of a dispositive motion, it is the plaintiff who bears the burden of establishing the court's jurisdiction. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed.Cir.1998); *Allen v. United States*, 46 Fed.Cl. 677, 680 (2000). The inquiry is appropriately directed to the party seeking relief under the power of the court. *See McNutt*, 298 U.S. at 189, 56 S.Ct. 780.

## III.  ANALYSIS

### A.  Local Zoning Ordinance

The Auburn City Council passed an ordinance, which was signed by the mayor on December 12, 1994, amending the zoning map of the City of Auburn to rezone Lot B of the Vista del Valle Subdivision from Single Family Residential to Open Space Conservation. This local land use restriction precludes development upon the subject property, and it was passed in response to plaintiff's own development proposal. Defendant argues that this local governmental restriction reserving the subject property as an Open Space Conservation area is dispositive of plaintiff's claim against the United States. *See* Def.'s Mot. for Leave to Supplement the R. at 3. Plaintiff responds by asserting that the federal government is responsible for the local ordinance under *Preseault v. United States* [4] and that the property may once again be rezoned. *See* Pl.'s Opp'n to Def.'s Mot. for Leave to Supplement the R. at 2–4.

According to plaintiff, all permits required for developing the remaining lots in the Vista del Valle subdivision, other than a Section 404 permit, had been obtained prior to the

Corps' characterization of the fourteen lots as wetlands. Because the rezoning occurred after the Corps' designation, plaintiff asserts that the City of Auburn was merely recognizing the Corps' delineation of the subject property as wetlands. Plaintiff cites *Preseault* as authority for holding the federal government responsible for the local ordinance. *See* Pl.'s Opp'n to Def.'s Mot. for Leave to Supplement the R. at 2–3. Specifically, plaintiff quotes the portion of the opinion that states, "The Federal Government authorized and controlled the behavior of the State in this matter, and the consequences properly fall there." *Preseault*, 100 F.3d at 1531. Plaintiff also refers to *Hendler v. United States*, 952 F.2d 1364 (Fed.Cir.1991) in making this argument.

In responding to plaintiff's argument that the Corps "influenced" the City of Auburn to follow suit, defendant first stresses that as a plurality opinion, *Preseault* is not controlling authority. *See* Def.'s Reply in Support of Def.'s Mot. for Leave to Supplement the R. at 6 (stating that the Federal Circuit did not produce a majority opinion, therefore "the discussions contained in the plurality, concurrence, and dissenting opinions are not controlling authority."). Defendant next distinguishes *Preseault* and *Hendler* from the matter at hand by focusing upon the language of these opinions, which concludes that federal compensation is warranted when the United States has authorized the state or local actions that effected the taking.

Assuming this court is bound by the *Preseault* plurality, the case can be distinguished, as can *Hendler*, from the set of facts currently at issue in this matter. In *Preseault*, the Federal Circuit concluded "that the occupation of the Preseaults' property by the City of Burlington *under the authority* of the Federal Government constituted a taking of their property for which the Constitution requires that just compensation be paid." [5]

---

4.  100 F.3d 1525 (Fed.Cir.1996) (plurality).

5.  The Preseaults were owners of property that was subject to a railroad easement, which was abandoned in 1975. They brought suit against the United States for just compensation under the Fifth Amendment for a taking of their land premised upon the conversion of an abandoned

railroad easement into a public recreational trail. The State of Vermont intervened in an Interstate Commerce Commission (ICC) proceeding, and petitioned the ICC to permit the railway to discontinue rail service and transfer the easement to the City of Burlington for use as a public trail. The National Trails System Act, 16 U.S.C.

*Preseault,* 100 F.3d at 1552 (emphasis added). The Federal Circuit reached a similar conclusion in *Hendler* when it determined that the activities of the State of California were conducted *under the authority* of a federal statute.[6] *Hendler,* 952 F.2d at 1378–79 (stating that the "California state officials who entered onto plaintiffs' land did so under the authority granted by CERCLA," and therefore, "their activities . . . are attributable to the Federal Government for purposes of takings law."). The City of Auburn, however, did not act pursuant to federal authorization when it rezoned Mr. Beekwilder's property as Open Space Conservation. The Corps does not have the power to authorize the zoning activities of the City of Auburn.

Plaintiff does not actually allege that the rezoning was "authorized" by the Federal Government. Rather, he asserts that the Corps' identification of wetlands "influenced the City of Auburn" and that the "City of Auburn merely recognized . . . that the Federal Government's action precluded" development on the subject property.[7] Pl.'s Opp'n to Def.'s Mot. for Leave to Supplement the R. at 2–3. As previously discussed, the standard set forth in *Preseault* and *Hendler* is one of local activity conducted under the authority of the Federal Government. Plaintiff fails to meet this standard. Furthermore, plaintiff has failed to provide applicable authority in support of his argument seeking federal compensation for a local zoning ordinance.

In support of his claim that the Corps influenced the rezoning by the City of Auburn, plaintiff stated that it was not until after the Corps had approved a plan creating ten (10) new lots with the remainder designated as wetland that plaintiff sought approval from the City of Auburn for the new development plan. The facts, however, demonstrate that plaintiff had begun to seek approval from the City of Auburn for the new design prior to approaching the Corps.[8] Plaintiff's argument is weakened further by the fact that the rezoning occurred as a result of plaintiff's own proposal submitted to the City of Auburn designating the area to be zoned open space.

Plaintiff's second theory regarding the Open Space Conservation zoning is that the City of Auburn may return to its original zoning of the subject property as residential. According to plaintiff, "what has been rezoned once may be rezoned again." Pl.'s Opp'n to Def.'s Mot. for Leave to Supplement the R. at 4. While it is true that the City of Auburn may one day rezone the subject property as residential, it is speculative for plaintiff to assume that the Corps at that time would not grant plaintiff a Section 404 permit. Furthermore, the evidence submitted by the defendant regarding the City of Auburn's zoning process, a declaration from the Community Development Director/City Planner, undercuts plaintiff's argument and demonstrates that an application to rezone the Open Space Conservation area would face a very uncertain future given the

§ 1247(d), provided the authority for such an action. This Act establishes a nationwide system of nature and recreational trails. The City of Burlington took possession of the Preseaults' property and opened it to public use pursuant to federal authorization.

6. Disregarding the objections of the Hendlers, the State of California, under the authorization and direction of the U.S. Environmental Protection Agency, entered upon the property of the Hendlers and established monitoring wells. The Hendlers subsequently filed a takings claim against the United States.

7. Plaintiff fails to establish that the Federal Government should be held responsible for the City of Auburn's rezoning. Furthermore, this Court has determined that such claims must be rejected on their merits. *See De–Tom Enterprises v. United States,* 213 Ct.Cl. 362, 552 F.2d 337, 339 (1977) ("If plaintiff's position is that the Air Force necessarily took plaintiff's property . . . simply by persuading the County Board not to change the zoning of the property, we must reject such a claim on its merits.").

8. Plaintiff submitted a proposed development plan to the City of Auburn in July of 1993, seeking development approval for only ten (10) lots. The authorization by the Corps of the new plan did not occur until November 8, 1993. The involvement of the Corps was initiated by a requested review on the part of the City of Auburn, which resulted in the Corps notifying the City of Auburn that a permit would be required for the proposed plan. After this notification, plaintiff submitted a request to the Corps in September of 1993. *See* Def.'s Reply in Support of Def.'s Mot. for Leave to Supplement the R. at 8.

environmental statutory requirements. *See* Def.'s Ex. 34. Therefore, plaintiff is unable to demonstrate that he could construct an economically viable development of the subject property but for the absence of a Section 404 permit. *See City Nat'l Bank v. United States,* 33 Fed.Cl. 759, 766 (1995) (finding that no taking occurred where the existing local governmental restriction precluded plaintiff from mining limerock at the subject property, even where the Corps had *denied* a permit application).

No authority exists under the local zoning ordinance for plaintiff to develop the subject property. Plaintiff has failed to establish that he could succeed in changing the zoning from Open Space Conservation to Single Family Residential, and plaintiff cannot receive federal compensation on the basis of a local zoning restriction. In light of the City of Auburn's Open Space Conservation zoning ordinance, plaintiff's claim for a taking against the United States must be rejected.

### B. Ripeness

Assuming, arguendo, plaintiff's claim properly lies against the United States, it would still fail because it is not ripe for judicial review. "The principle that the federal courts require an actual, present controversy, and therefore will not act when the issue is only hypothetical or the existence of a controversy merely speculative" is commonly referred to as the ripeness doctrine. *Black's Law Dictionary* 1328 (6th ed.1990). This prudential doctrine serves to prevent premature adjudication and ensure that a case has matured into a controversy proper for judicial resolution. It is inconsistent with our democratic form of government for courts to resolve abstract questions. That is the appropriate sphere for the political branches.

If a claim is not ripe for review, the court lacks subject matter jurisdiction to adjudicate the dispute. A plaintiff's failure to present a ripe dispute is a defect that goes to the heart of the court's jurisdiction to hear the claim. *See Suitum v. Tahoe Regional Planning Agency,* 520 U.S. 725, 735–40, 117 S.Ct. 1659, 137 L.Ed.2d 980 (1997); *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 190–93, 105 S.Ct.

3108, 87 L.Ed.2d 126 (1985). It is the plaintiff's burden, as the party seeking relief under the power of the court, to establish the court's jurisdiction. *See McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1377 (Fed.Cir.1998); *Allen v. United States,* 46 Fed.Cl. 677, 680 (2000). The inquiry is appropriately directed to the party seeking relief under the power of the court. *See McNutt,* 298 U.S. at 189, 56 S.Ct. 780.

A taking challenge does not ripen "until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question." *Suitum,* 520 U.S. at 737, 117 S.Ct. 1659 (quoting *Williamson County,* 473 U.S. at 191, 105 S.Ct. 3108). In order to demonstrate that his takings claim is ripe for review, plaintiff must establish that he has applied for a permit and obtained a definitive evaluation from the Corps of the impact of the Section 404 wetland program on the proposed development. Plaintiff cannot meet this burden because he has not applied for a permit to develop the subject property, therefore plaintiff's claim is not ripe.

Plaintiff's filing of this cause of action is inconsistent with established Supreme Court caselaw, which requires a final agency position regarding the application of the "regulations at issue to the particular land in question." *Williamson County,* 473 U.S. at 191, 105 S.Ct. 3108; *see also Palazzolo v. Rhode Island,* 533 U.S. 606, 620–21, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001) *Suitum,* 520 U.S. at 735–40, 117 S.Ct. 1659; *MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 345–51, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986). The Supreme Court has clearly insisted that a regulatory taking claim does not ripen "until the government[al] entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson County,* 473 U.S. at 186, 105 S.Ct. 3108. It is difficult to determine whether a regulation has gone "too far" unless one knows how far the regulation goes. *See MacDonald,* 477 U.S. at 348, 106 S.Ct. 2561.

This requirement of a final decision has been developed in greater detail by the Court of Federal Claims, which has repeatedly held that in Section 404 permit cases, a regulatory takings claim is premature where the plaintiff has never submitted a permit application to the governing authority. *See Pax Christi Memorial Gardens, Inc. v. United States,* 52 Fed.Cl. 318, 324 (2002) (finding Corps' withdrawal of § 404 permit application was not a final decision, but simply a postponement of a final decision until all necessary information was submitted); *Cooley v. United States,* 46 Fed.Cl. 538, 543–45 (2000); *Tabb Lakes, Inc. v. United States,* 26 Cl.Ct. 1334, 1353 (1992); *Conant v. United States,* 12 Cl.Ct. 689, 691–92 (1987); *Loveladies Harbor, Inc. v. United States,* 15 Cl.Ct. 381, 385 (1988) ("It is well-settled that a takings claim is premature where the private litigant never submitted a plan or application for development to the governing body whose approval was required."); *see also Bayou Des Familles Development Corp. v. United States,* 130 F.3d 1034, 1037–40 (Fed. Cir.1997) ("As a prudential matter, courts are reluctant to permit themselves to be drawn into a dispute between a property owner and a land use regulatory agency until the agency has had an opportunity to evaluate the situation fully and make a considered decision."); *Burlington N.R.R. Co. v. United States,* 752 F.2d 627, 630 (Fed.Cir.1985) (concluding that plaintiff's taking claim was premature given that it had failed to seek a permit).

Plaintiff's failure to submit an application for a Section 404 permit precludes the Corps from evaluating the situation and rendering a considered decision as to the extent of permissible development on the subject property and the amount, if any, of mitigation that would be required to obtain a permit. The Corps has not reached a final, definitive position regarding the impact of the Section 404 program on the subject property, therefore plaintiff's claim is not yet ripe for judicial review.

Plaintiff, however, asserts that the court possesses jurisdiction over his claim because submission of a permit application would be futile. The futility exception to the ripeness doctrine recognizes that ripeness is not a mechanical or formalistic concept. If submitting an application, or taking a step in an administrative process would serve no purpose then its avoidance will not defeat ripeness. *See Heck and Assocs. v. United States,* 134 F.3d 1468, 1472 (Fed.Cir.1998); *Cooley,* 46 Fed.Cl. at 544–45; *Florida Rock Industries, Inc. v. United States,* No. 266–82L, 2000 WL 331830, at *3–*4 (Fed.Cl. March 28, 2000); *Marks v. United States,* 34 Fed.Cl. 387, 405 (1995). Generally, a plaintiff must avail himself of the prescribed administrative remedies in order for his claim to be ripe for judicial review. *See Hodel v. Virginia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 297, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981); *Marks,* 34 Fed.Cl. at 405. Clear evidence of the futility of exhausting potential administrative relief is part of the plaintiff's burden. This evidence would have to be particularly strong with respect to this permit application since Phases I, II, and as modified, III all received Corps permission.

The Section 404 permit program, administered by the Corps, regulates the discharge of dredged or fill material into "waters of the United States" pursuant to the Clean Water Act.[9] *See* 33 U.S.C. §§ 1344 & 1362(7). Under this program, a property owner may seek the permission of the Corps to discharge fill under an individual permit or a nationwide permit. Following the receipt of certain information provided by the property owner, the Corps determines whether the proposed discharge qualifies for a permit.

In this case plaintiff claims such action would be futile because of the Corps' policy requiring mitigation in an amount that would substantially exceed the value of the subject property. Plaintiff argues that it is unneces-

---

9. The court notes that since oral argument the Supreme Court in *Solid Waste Agency of Northern Cook County v. U.S. Army Corps of Engineers,* 531 U.S. 159, 121 S.Ct. 675, 148 L.Ed.2d 576 (2001), narrowed the jurisdiction of the Corps under § 404(a)(3) of the CWA. The Court held that the Corps does not have jurisdiction over waters that are "nonnavigable, isolated, [and] intrastate." *Id.* at 677, 121 S.Ct. 675. It is unclear from the record if the wetland in question would be exempt from regulation. In any event, this issue is not properly before the court and therefore can not be considered.

sary to determine the exact amount of mitigation given that the required amount will obviously be greater than the value of plaintiff's property. In support of his argument, plaintiff relies upon several communications with the Corps and two cases from the Ninth Circuit: *Herrington v. County of Sonoma*, 857 F.2d 567 (9th Cir.1988) and *Martino v. Santa Clara Valley Water District*, 703 F.2d 1141 (9th Cir.1983).

The communications upon which plaintiff relies are the telephone conversations of September 28, 1995, and March 25, 1996, as well as the letter sent from the Corps dated March 26, 1996. All three of these communications involved plaintiff inquiring as to the amount of required mitigation and the Corps responding that mitigation ratios are determined following submission of a proposal and fact specific inquiries. The Corps also informed plaintiff that the ratio could be anywhere in the range of 1:1 to 3:1 and suggested that for planning purposes plaintiff employ a 2:1 ratio. Based upon these statements, plaintiff concludes he would be required to purchase and dedicate offsite land with at least a 2:1 ratio and such required mitigation would substantially exceed the value of the subject property. Rather than supporting plaintiff's assertion of a Corps mitigation policy, these communications undermine the existence of such a policy. *See Pax Christi*, 52 Fed.Cl. at 325–26 (holding futility exception did not apply where communications relied upon notified plaintiff that more information was needed before a final decision could be made). In each instance, the Corps repeatedly informed plaintiff that mitigation requirements are determined on a case-by-case basis after review of a specific proposal. Plaintiff's failure to submit a proposal or seek a permit prevents the Corps from determining the amount or type of mitigation necessary. *See id.* It also makes plaintiff's assertion that the costs of mitigation will substantially exceed the value of the subject property problematic at best.

In addition to these communications, plaintiff supports his argument with two Ninth Circuit cases, *Martino* and *Herrington*. The court first notes that as Ninth Circuit cases,

these decisions are not controlling authority, however they may be persuasive authority. However, here each case is distinguishable from the facts in the instant cause of action. In *Martino*, the plaintiffs alleged that the governmental actions were intended to preclude *all* development and use of their property. *Martino*, 703 F.2d at 1144 (emphasis added). The court in *Martino* held that "failure to submit a development plan is not, in and of itself, a bar" to a facial attack on the *ordinance* because the "facial attack raises material issues of fact as to whether the mere enactment of the *ordinance*" constituted a taking of plaintiffs' property. *Id.* at 1146–47 (emphasis added). Plaintiff in this case is not raising a facial attack on an ordinance. Rather, he alleges that the Corps' mitigation "policy" has taken his property. As previously discussed, the Corps' has no specific mitigation policy; it makes mitigation determinations on a case-specific basis. The impact upon plaintiff cannot be known until he submits a proposal and permit application.

*Herrington* also differs from the present case in that the plaintiffs in *Herrington* submitted a proposal for developing their property, which the court concluded had been rejected by the agency. This final decision means the matter is ripe for review. *Herrington*, 857 F.2d at 569–70. Plaintiff clarifies the matter further when he cites *Herrington* for the proposition that a "property owner may not rely on the futility exception unless he makes at least one meaningful application." Pl.'s Opp'n to Mot. to Dismiss or in the Alternative, for Summ. J. at 11. Mr. Beekwilder, however, did not request a pre-application consultation nor did he submit a development plan or permit application for the subject property.

Plaintiff and his partners initially contacted the Corps regarding the Vista del Valle development in 1988. Since that time, the Corps has issued two permits and one letter of permission for the development. Plaintiff contacted the Corps in 1995, to inquire about mitigation requirements for authorization to build homes on the subject property. The Corps informed plaintiff that a mitigation determination could not be made until plain-

tiff submitted a proposal and application. The Corps also offered to conduct a pre-application consultation with plaintiff, however plaintiff did not accept and indicated he would let the Corps know if he desired such a meeting. Plaintiff never requested a pre-application consultation nor did he submit an application for a permit for the property at issue in this case. Without taking the necessary steps to obtain a mitigation determination, plaintiff cannot assert that the cost of such mitigation will equal or exceed the value of the subject property. Plaintiff's failure to avail himself of the administrative process has precluded the Corps from rendering a final and definitive decision as to how the Section 404 permit program will be applied to the subject property. There is no showing here that plaintiff's permit application and mitigation consideration would have been futile. Absent a final determination from the Corps regarding the application of the Section 404 program to plaintiff's land, based upon a permit application plaintiff has yet to submit, it is speculative and premature for plaintiff to assert that the Corps' has a policy requiring mitigation in an amount that would substantially exceed the value of the subject property. The amount of required mitigation, if any, will not be known until plaintiff submits a permit application. *See Heck and Assocs. v. United States,* 134 F.3d 1468 (Fed. Cir.1998); *Pax Christi,* 52 Fed.Cl. at 326.

## CONCLUSION

Accordingly, for the reasons stated above, the defendant's motion to dismiss for failure to state a claim, is **GRANTED**. Each party to bear its own costs. The Clerk of the Court is therefore directed to dismiss this case.

It is so ORDERED.